STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. GARY
BIANCO, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Originally Argued March 29, 1984—Decided April 6, 1984.
Remanded by Supreme Court November 14,
1984—Reargued February 7, 1985.
Decided July 15, 1985.

464

Before Judges MATTHEWS, J.H., COLEMAN and GAUL-KIN.

*John Burke III* argued the cause for appellant (*Joseph H. Rodriguez,* Public Defender, attorney).

*Carol M. Henderson,* Deputy Attorney General, argued the cause for respondent (*Irwin I. Kimmelman,* Attorney General, attorney).

*The American Civil Liberties Union of New Jersey* filed a letter brief *amicus curiae (Deborah H. Karpatkin,* staff counsel on the letter brief).

PER CURIAM.

Defendant was charged together with his mother, Nancy Bianco, with two counts of conspiracy to commit robbery (*N.J. S.A.* 2C:5–2) and two counts of first degree robbery (*N.J.S.A.* 2C:15–1).

Following plea negotiations, defendant entered a *retraxit* plea of guilty to one count of first degree robbery. The State agreed to move to dismiss the remaining counts and to recommend that any custodial sentence be concurrent but not coterminous with defendant's Essex County sentences. The State also reserved the right to speak at sentencing. Defendant was questioned by the court to ascertain whether he understood the nature and consequences of his plea. He was specifically informed by the court of the custodial sentence, fines and penalties that could be imposed and that he could receive a period of parole ineligibility. Satisfied that the guilty plea was

knowing and voluntary and supported by a sufficient factual basis, the court accepted the plea.

Defendant was thereafter sentenced to a custodial term of 20 years with a 10 year period of parole ineligibility.[1] This sentence was concurrent, but not coterminous, with his sentences imposed in Essex County.[2] He also was ordered to pay a penalty of $25 to the Violent Crimes Compensation Board. The remaining counts of the indictment were dismissed by the court.

A notice of appeal was filed on defendant's behalf and the appeal was argued before Judges Gaulkin and Shebell. An order was entered by the court affirming defendant's judgment of conviction and sentence.

Defendant thereafter petitioned the Supreme Court for certification on the grounds that he was denied equal protection and due process of law because his appeal was heard as part of the Appellate Division's Excessive Sentence Oral Argument Program (the Program) which was approved by order of the Supreme Court on March 22, 1984. The petition was granted and the cause was remanded to this court for consideration of the equal protection and due process arguments raised in the petition. 99 *N.J.* 191

## I.

Defendant's constitutional claims are based upon the following description of the Program which, he states, comes from the knowledge of his counsel and conversation with a staff attorney in the office of the Clerk of the Appellate Division.[3]

---

[1]Defendant was not sentenced pursuant to the *Graves* Act, *N.J.S.A.* 2C:43–6 c, because although he threatened the use of a deadly weapon, he did not actually possess one.

[2]Defendant was sentenced on multiple Essex County indictments to an aggregate sentence of 30 years imprisonment with a 15 year period of parole ineligibility.

[3]The staff attorney was not associated with the Program.

### c. THE PILOT PROJECT FOR EXCESSIVE SENTENCE APPEALS

The Pilot Project for Excessive Sentence Appeals is an experimental program established by court order to expedite the appeal of a sentence imposed pursuant to a plea agreement. The program accomplishes its objective by abbreviating the appellate review accorded an appeal in which excessiveness of sentence is the sole issue. Essentially, the program reduces an appeal to a limited oral presentation of argument. Appeals involving other issues or exceptionally lengthy sentences are exempt from the program and entitled to traditional appellate review. The program, which was designed to reduce the backlog of cases present within the Office of the Public Defender, applies exclusively to defendants with assigned counsel. It does not apply to defendants with private counsel.

The selection of cases for participation in the program is made randomly without reference to articulable standards. Ready cases are simply chosen by lottery without regard to age of case or other distinguishing factor. Since the inception of the program in March 1984, the practice of the Appellate Division has been to select 40 to 60 cases for disposition in a single day. The program has operated twice a month. Cases that are not chosen by the program are administered by the Public Defender according to the established practice of appellate procedure. A defendant is not allowed the option of withdrawing his appeal from the program once it is selected.

Prior to the hearing, the Appellate Division is provided with transcripts of the plea and sentencing hearings, the indictment, judgment of conviction and the presentence report. Counsel for the appellants are allowed to present oral argument to the court and are not permitted to submit written briefs. As a practical matter, the average argument lasts approximately five to ten minutes and the appeals are decided by the court in assembly-line fashion. The proceedings are neither recorded, nor transcribed. The court does not explicate its decision, but issues an order at a later date without a statement of reasons.

The procedure of appellate review afforded cases under the Pilot Project differs from the procedure accorded other appeals. Ordinarily, an appeal consists of the right to submit a written brief, to reply to the written argument of opposing counsel and to request oral argument. The Pilot Project reduces the right to appeal to a fleeting oral argument. The effect of the program is to deprive the defendant of the benefit of full appellate review, including, most importantly, a record of the proceedings. [footnote omitted]

In response to this description offered by defendant, we requested Wesley R. LaBar, Deputy Clerk of this court, to submit his certification detailing the genesis, design and operation of the Program. That certification, which has been filed as part of the record on this appeal, is set forth in full as an appendix to this opinion. It discloses that the Program was proposed only after intensive research and study. It came

about as a direct result of the creation and subsequent activity of the special five judge criminal panel of this court which was instituted in September 1984 at the direction of the Chief Justice. Because of its specialization, that panel was better able to track the different types of criminal appeals filed and pending before the court. In the area of appeals involving only the excessiveness of sentence, the court found itself confronted with an inventory of 568 cases some of which were three to four years old. That backlog was due mainly to the inability of the Public Defender to file briefs because of personnel and budget deficiencies. The judges were concerned that some defendants might be serving illegal or excessive sentences which could be fully served before being subjected to appellate review.

When the Program was instituted, appeals were generally scheduled for disposition according to the age of the case. The older the case, the earlier it would appear on the excessive sentence calendar. It was the intention of the court that *all* excessive sentence appeals be disposed of in similar manner. Contrary to defendant's contention, the Program applied and presently applies to cases in which private counsel has been retained as well as Public Defender cases. Of course the former are in a distinct minority; cases which involve the sole issue of excessiveness of sentence are almost exclusively Public Defender cases.

At the beginning of the Program it was found that, in some instances, excessive sentence appeals had been assigned by the Public Defender to designated counsel for briefing on a contract basis. In those cases we accepted the briefs which were filed since they had been paid for by the Public Defender; our judicial review was based upon the records and briefs and oral argument was rarely heard. The Public Defender was instructed by the court to terminate the use of designated counsel in excessive sentences cases, and the court refused after August 20, 1984 to accept any briefs in those cases. It was and is the

court's intention that all excessive sentence cases be handled in the same manner.

## II.

■ Defendant first argues that the Program deprives him of the equal protection of the law in that it creates a subclass among those similarly situated and discriminates against them by arbitrarily denying them the benefit of appellate review. Specifically, he says, those defendants "selected" for the Program are deprived of the opportunity to present written argument, a record of the argument presented to the court, a full statement of the reasons for the court's decision and an opportunity for meaningful further review. Defendant contends that the Program's special handling of excessive sentence appeals represents an arbitrary classification bearing no rational relationship to a legitimate state interest. We find, to the contrary, that a very substantial State interest is rationally and effectively advanced by singling out excessive sentence appeals for disposition with oral argument but without briefs. Moreover, we are satisfied that such disparate treatment does not work to the disadvantage of any defendant or class of defendants.

The American Bar Association has suggested a number of procedural devices for reducing the delay resulting from the dramatic rise in criminal appeals, including elimination of briefs. American Bar Association, *Criminal Appeals* (1978), commentary to standard 21–3.1 at 21.38. Handling of appeals through creating different procedures depending on the complexity of the case is deemed desirable, so long as the appellate panel is informed of the facts, understands the arguments of the party and collegially reaches a reasoned conclusion. *Id.*, standard 21–3.4 at 21.47.

Professors Carrington, Meador and Rosenberg in their well-known book *Justice on Appeal* (1976), have stated this with respect to the elimination of briefs in certain types of appeals:

> The idea of dispensing with briefs derives from the realization that close study of the written arguments and of cases and statutes is not called for in all cases. The special advantages of written argumentation are not always useful. Many appeals turn upon matters that can be resolved by oral presentation of the issues and references to the record or papers on appeal. This is especially so where the issues are simple or routine, involving only well settled issues of law and their application to relatively uncomplicated factual situations. In such cases it may be that written briefs simply complicate the judge's task by encouraging the parties to conceive and develop arguments that may not be central to disposition of the appeal. An experiment conducted with a group of state appellate judges confirms that it is entirely possible to decide a case without briefs, at least where the issues are relatively few and simple. This has always been done in English appeals.

Under the program, the court is supplied in each case with a copy of the indictment, a copy of the plea transcript, the sentencing transcript, the presentence report and the judgment of conviction which contains the sentence and also the reasons given by the sentencing judge. These documents are reviewed by the judges hearing the appeal before oral argument. At argument, counsel is not restricted as to his time, except as it is restricted under the rules of court. He has the opportunity to present the specifics with respect to his client in an effort to demonstrate that the sentence imposed is manifestly excessive or harsh, otherwise illegal or not in accord with the plea bargain. The judges have an opportunity to question counsel about anything in the documents before them which might conflict with or support the argument being advanced by counsel. The experience of the judges who have participated in the program is positive. It has shown that the judges, after reading the documents submitted and hearing the argument of counsel, fully understand the nature of the complaint that is being brought to them and are fully prepared to deal intelligently with it.

Since the commencement of the present term of court, the presiding judge for administration has directed that all oral arguments in excessive sentence appeals be recorded by tape-recorder. This directive came about after a request was made for such recordation of arguments by the Public Defender, whose clients sought information as to the substance of the

appellate proceedings waged in their behalf. The record which is transcribed contains the argument of counsel and the colloquy of the court but does not indicate the decision which is reached later by the judges in conference.

Defendant argues also that the use of a summary order rather than an opinion containing a full statement of reasons for the court's decision also deprives him of an opportunity for further meaningful review. Again we must disagree. Under the old procedure, the opinion issued by the court was in most cases, a summary affirmance citing *R.* 2:11–3.

There is no requirement in law or rule of court dictating that an appellate court must accompany its decision by a written opinion, except in the case of a judge dissenting in the Appellate Division. *See R.* 2:11–3. Nor does the fact that the disposition of a case is by a summary order, rather than a formal published opinion, indicate that less than adequate consideration has been given to the claims raised on the appeal. As we have noted, the judges have reviewed the documents submitted and thereafter heard oral argument with respect to each appellant. Subsequent to argument, the judges confer, and after that procedure, the order is entered. The fact that an order is entered should assure the appellant that the judges have viewed his claim in light of existing precedents, and have concluded that there is nothing in the case that would add to the jurisprudence existing by the publication of an opinion. Where a reduction or modification of a sentence is recommended, it is usually accompanied with a brief statement of the reason and the cause remanded to the sentencing court for further proceedings consistent with the direction. On few occasions, the court has modified a sentence or vacated a sentence on its own, and when it does so, it invariably states the reasons for the action taken. We find no merit in this argument. *See United States v. Baynes,* 548 *F.*2d 481 (3 Cir.1977), *United States v. Marines,* 535 *F.*2d 552 (10 Cir.1976) and *Furman v. United States,* 720 *F.*2d 263 (2 Cir.1983).

Defendant is also mistaken when he contends that his sentence, as well as all of the sentences reviewed in the Program, was chosen by lottery and therefore created a class among the class of defendants eligible for the Program. Assuming legitimacy to this argument, we need only note that a lottery system was never employed in choosing the appeals. In some instances, an older case could not be placed on a calendar because documents necessary for review by the judges had not yet been filed with the court. Such a case was skipped over and a newer complete case was placed on the calendar for review.

### III.

Nor do we find any merit in defendant's argument that the procedures employed in the Program violated his due process rights.

At the outset we note that the United States Supreme Court has held that the due process clause of the Fourteenth Amendment does not require a state to provide appellate review. *Ohio ex rel. Bryant v. Akron Metropolitan Park Dist.*, 281 *U.S.* 74, 80, 50 *S.Ct.* 228, 230, 74 *L.Ed.* 710 (1930). *Accord, Lindsey v. Normet*, 405 *U.S.* 56, 77, 92 *S.Ct.* 862, 876, 31 *L.Ed.* 2d 36 (1972); *Griffin v. Illinois*, 351 *U.S.* 12, 18, 76 *S.Ct.* 585, 590, 100 *L.Ed.* 891 (1956), reh. den. 351 *U.S.* 958, 76 *S.Ct.* 844, 100 *L.Ed.* 1480 (1956). The Court recently reaffirmed this proposition, stating "[t]here is, of course, no constitutional right to an appeal...." *Jones v. Barnes*, 463 *U.S.* 745, 103 *S.Ct.* 3308, 77 *L.Ed.*2d 987, 993 (1983).

Of course, if a state does provide an avenue of appeal, it must be implemented fairly. The State must provide an indigent criminal defendant with the means necessary to prosecute an appeal, such as a free transcript and effective assistance of counsel. Otherwise the indigent would be denied appellate review by reason of poverty. *Jones v. Barnes*, 463 U.S. at 752, 103 *S.Ct.* at 3312, 77 *L.Ed.*2d at 993; *Anders v. California*, 386 *U.S.* 738, 87 *S.Ct.* 1396, 18 *L.Ed.*2d 493 (1967)

reh. den. 338 *U.S.* 924, 87 *S.Ct.* 2094, 18 *L.Ed.*2d 1377 (1956); *Griffin v. Illinois*, 351 *U.S.* at 17–18, 76 *S.Ct.* at 589–90.

Our State Constitution, however, does provide for the appellate review of criminal convictions. *N.J. Const.* (1947), Art. VI, § 5, par. 2. Since appellate review of a final judgment by a state court in a criminal matter is not a necessary element of due process of law, such review may be granted upon such terms as the state deems proper.[4] *Application of Boyer*, 226 *F.Supp.* 888, 891 (D.N.J.1963), aff'd *o.b.* 328 *F.*2d 620 (3 Cir. 1964), *cert.* den. 377 *U.S.* 937, 84 *S.Ct.* 1342, 12 *L.Ed.*2d 300 (1964). A state can, consistently with the Fourteenth Amendment, provide for differences so long as the result does not amount to a denial of due process or an invidious discrimination. *Ross v. Moffitt*, 417 *U.S.* 600, 608, 94 *S.Ct.* 2437, 2442, 41 *L.Ed.*2d 341 (1974); *Douglas v. California*, 372 *U.S.* 353, 356, 83 *S.Ct.* 814, 816, 9 *L.Ed.*2d 811 (1963).

The Fourteenth Amendment does not require absolute equality or precisely equal advantages. *Ross v. Moffitt*, 417 *U.S.* at 612, 94 *S.Ct.* at 2444; *Douglas v. California*, 372 *U.S.* at 357, 83 *S.Ct.* at 816. It does require that the state appellate system be free of unreasoned distinctions, and that indigents have an adequate opportunity to present their claims fairly within the adversary system. *Ross v. Moffitt*, 417 *U.S.* at 612 and 616, 94 *S.Ct.* at 2446; *United States v. MacCollom*, 426 *U.S.* 317, 325–326, 96 *S.Ct.* 2086, 2091–92, 48 *L.Ed.*2d 666 (1976). Unfairness results only if indigents are singled out by the state and denied meaningful access to the appellate system because of their poverty. *Ross v. Moffitt*, 417 *U.S.* at 611, 94 *S.Ct.* at 2444.

We find no arbitrariness in the Program as we have described it. All excessive sentence cases are disposed of in the

---

[4] We do not read *N.J.S.A.* 2C:44–7 to require any greater review than that provided for in our Constitution.

Program; each case is fully and fairly heard, considered and decided; the fact that excessive sentence appeals are disposed of without briefs is not arbitrary in fact or in theory.

## IV.

For the reasons we have stated, we find no legal infirmities in this defendant's appeal under the excessive sentence program, nor do we find any such infirmities in the Program as a whole.

 Defendant once again claims that his sentence is manifestly excessive. He raises this claim both in a supplemental *pro se* brief and the brief filed on his behalf by the Public Defender. We again have reviewed the arguments advanced in this vein and find them totally without merit. *R.* 2:11–3(e)(2).

Affirmed.

## APPENDIX

## STATE OF NEW JERSEY

## V.

## GARY BIANCO

## COUNTY OF MERCER

## STATE OF NEW JERSEY

## CERTIFICATION

I, WESLEY R. LA BAR, of full age, being duly sworn, according to law, upon my oath, depose and say:

1. I am Deputy Clerk of the Appellate Division of the Superior Court of the State of New Jersey.

2. In my capacity as Deputy Clerk, I served as staff person to the Criminal Appeals Expediting Committee from which the recommendation for the excessive sentence oral argument with-

out brief procedure emanated last year. As such, I am thoroughly familiar with the establishment of the program and with its practices and procedures.

3. In my capacity as Deputy Clerk, I am also thoroughly familiar with the practices and procedures within the Clerk's office and with Appellate Division case processing statistics.

4. During the court year, September 1, 1982 to August 31, 1983 the Appellate Division of Superior Court of the State of New Jersey entered final dispositions in nearly 6400 appeals. Dispositions outnumbered new filings by three. This was the largest number of filings and dispositions in the history of the court.

5. Criminal appeals comprised approximately 42.5% of all new filings during the 1982–83 court year. For the past several years, criminal appeals were perfected more slowly than civil appeals, and therefore, were disposed of at a slower rate. During this court year, slightly more than 600 more criminal appeals were filed than were disposed. Thus, at the end of this court year, criminal appeals accounted for 54.8% of all pending appeals.

6. In the summer of 1982, Chief Justice Robert N. Wilentz took several steps to address the increasing backlog and increasing delays in the processing and perfecting of criminal appeals. First, he established an experimental 5-judge criminal part of the Appellate Division to hear all criminal appeals during the 1983–1984 court year. This experimental part was headed by the Honorable Robert A. Matthews, Presiding Judge for Administration of the Appellate Division. Second, he established the Criminal Appeals Expediting Committee to examine criminal appeals case processing, and to monitor the work of the Office of the Public Defender and the Division of Criminal Justice of the Attorney General's office. Members of the 5-judge criminal part served on the Criminal Appeals Expediting Committee and served as liaison with the Offices of the Public Defender and the Attorney General. The Committee

was staffed by the Administrative Office of the Courts and by the Clerk's office.

7. The Criminal Appeals Expediting Committee examined the practices and procedures used in the states of Rhode Island and Washington. In these states, criminal appeals have been expedited using an order to show cause procedure, requiring counsel to show cause why the matter should not be summarily affirmed or reversed. Several committee members visited Rhode Island and discussed that program with participants. While both programs appeared well suited to their individual environs, the Criminal Appeals Expediting Committee was of the opinion that neither process could be transplanted directly to New Jersey because of the tremendous volume encountered by our courts, and because of other regional differences.

8. The Committee discussed various ways to improve the timely completion of trial transcripts and several methods of identifying and tracking various types of criminal appeals in ways similar to the Rhode Island project. Small scale studies were conducted during the 1983–1984 court year although no final decisions were made concerning th establishment of a comprehensive case tracking system.

9. During the initial review of the Rhode Island procedures and consideration of possible criminal case tracks, the Clerk's office offered to identify all criminal cases in which the excessiveness of the sentence was potentially the sole issue on appeal. It was suggested that these cases could be identified at the time of the filing of the notice of appeal and could be removed from any tracking procedure that might involve case conferencing and identification and limitation of issues. Such cases could instead be handled on a order to show cause basis why the sentence below should not be affirmed, modified or reversed summarily. Continued discussion among judges and staff resulted in a proposal that excess sentence appeals be identified and placed on an oral argument calendar, without the benefit of brief, for summary disposition. This proposal was

adopted by the Criminal Appeals Expediting Committee, by the Presiding Judges of the Appellate Division, and subsequently, by the Supreme Court. The Chief Justice entered an Order relaxing the Rules of Court to permit oral argument without brief in excess sentence appeals. Both the Office of the Public Defender and the Office of the Attorney General agreed to try the concept of oral argument without brief in excessive sentence appeals. It was agreed by all that any additional issues raised at the time of oral argument would act to remove the appeal from the program. In those cases, the court would establish a scheduling order for full briefing of the appeal.

10. The tracking of excessive sentence appeals begins in the Clerk's office with the receipt and filing of the notice of appeal. In the beginning, the staff of the Clerk's office relied on the prescribed transcript request form which was attached to the notice of appeal pursuant to Court Rule. Any criminal appeal in which the only transcripts ordered were of the plea and sentencing, were considered to be potential excessive sentence appeals and given the priority code "6". This priority code was entered into the computerized docketing system and served as a key by which excessive sentence appeals might be monitored and listed. Subsequent amendments to Rule 2:5–3 requiring the filing of a criminal case information statement with the notice of appeal provided counsel the opportunity to list the potential issues on appeal. Staff in the Clerk's office now also examines the criminal case information statement to determine whether an appeal might properly be designated as one in which the only issue on appeal is the excessiveness of the sentence. However, inasmuch as the bulk of the excessive sentence appeals emanate from the Office of the Public Defender, and inasmuch as that office does not identify the issues until all the transcripts have been received, the main source for tracking excessive sentence appeals remains the prescribed transcript request form.

11. Prior to the initiation of the excessive sentence experiment, a large number of the excessive sentence appeals were

two years old or older and still awaiting briefing by the Public Defender's office. The excessive sentence program was designed to maximize the efficiency of attorney time and minimize the need for support time for both the Public Defender and the Attorney General. By hearing a significant number of appeals at each sitting, a small group of attorneys can prepare, travel to court and present cogent arguments in a precise and succinct manner. The court, having reviewed the entire record below, is then able to summarily dispose of the excessive sentence appeal. Additional savings of the program are the reduced support staff needed to produce the final disposition order rather than the usual full opinion by the court.

12. When an excessive sentence appeal is ready for calendaring, *i.e.*, when the transcripts of the plea and sentencing have been received from the court reporter, the file is reviewed in the Clerk's office to determine whether any documents may be missing (e.g. probation presentence investigation, judgment of conviction or indictment), to insure that additional issues do not exist, to check for possible judicial disqualifications, and to check for any outstanding motions. Following the successful conclusion of the review process the matter is ready for calendaring.

13. Cases are selected for calendaring on the basis of the oldest notice of appeal being taken first. The appropriate number of cases are selected for each calendar, making sure that no disqualifications exist for the judges of the panel being assigned the appeals. A modified calendaring notice is sent to all parties advising them of the calendar date and approximate time of argument. A modified form of the calendaring notice is used because most excessive sentence appeals emanate from the Office of the Public Defender. The modified notice is in the form of a letter listing up to ten cases on each notice (rather than one per notice as on the usual form). This allows the Clerk's office to save some time in generating excessive sentence calendar notices.

14. The calendar notices (see pp. 490, 491) state the docket number of each excessive sentence appeal, the caption of the appeal, the name of defense counsel assigned to the appeal according to the notice of appeal and indicate the time and date of oral argument. To date, all excessive sentence calendars have been scheduled in Trenton. The notice of calendaring also advises defense counsel to provide, within 10 days, the additional copies of the plea and sentencing transcripts, the judgment of conviction, the probation presentence report, and other appendix-type documents such as the indictments which they wish presented to the Court. Defense counsel is also advised to send copies to the Attorney General's office or the County Prosecutor, whoever is handling the appeal for the State.

15. Upon receipt of these documents, the Clerk's office prepares the calendar and delivers copies of all the pertinent documents to the judges scheduled to hear the excessive sentence appeals.

16. Prior to oral argument, the Clerk's office also draws up form orders and blank orders for use by the court in disposing of the excessive sentence appeals. When the judges arrive for oral argument, they are presented with the orders for the day. Each order consists of a package of three documents. (A copy of each form is attached at pp. 485 through 487.) One is a blank order with the caption of the case which may be filled in with the specific language desired by the court in deciding the appeal. The second is a form of order utilizing the most common language affirming an excessive sentence appeal and concluding that the sentence imposed by the trial judge does not reflect an abuse of discretion. This language cites New Jersey Supreme Court decisions *State v. Whitaker*, 79 *N.J.* 503 (1979) and *State v. Roth*, 95 *N.J.* 334 (1984). The final page is a checklist of other standard language which the court may use in certain common situations. If the court checks off this stock language, the blank form of order is then filled in with the appropriate language and, subsequently, signed by the court. At the bottom of the form, the judge may write in other specific

language which he or she would like incorporated into the order, either separately or in conjunction with the language at the top of the form.

17. During April, May, and June of 1984, four excess sentence calendars were held. Two judges, sitting in each of the two court rooms, were utilized. Each two-judge panel began the calendar with a list of 30 appeals. During late June and July 1984, three additional excessive sentence calendars were held. In each instance a single court room, utilizing three judges sitting in rotating two-judge parts, was used. The rotation resulted in three sub-panels of two judges each hearing 15 excessive sentence appeals apiece. These sitting combinations resulted in the sitting of the equivalent of 22 two-judge panels during the entire project. A total of 390 excessive sentence appeals were calendared. Of these, 32 were removed from the calendar because they had been pooled to designated counsel by the Office of the Public Defender; 36 were removed by postponement by the court for the filing of full briefs; 5 were removed from the calendar because they were fully briefed by the time the argument date arrived and were handled as submissions on the briefs; and a handful of other excessive sentence appeals were removed from the calendar because the Public Defender file was not complete.

18. A total of 307 of the 390 calendared cases were disposed through the excessive sentence procedure or prior to argument date, by Stipulation of Dismissal or other Order of Dismissal. Two-hundred and seventy-seven of the calendared appeals were disposed of by the court on or about the date of oral argument as excessive sentence appeals.

19. The majority of the 277 court dispositions during the experimental program used the standard language with or without minor additions. Many of the affirmances affirmed in part and also modified restitution terms or other terms of the sentence imposed. These were considered for statistical purposes to fall within the use of standard language.

20. The judges experimented with two methods of case disposition. Several issued verbal decisions from the bench following a discussion at side bar immediately following the oral argument. At other times, it was deemed more appropriate to reserve decision and have the order issued out of the Clerk's office that day or the following day. Prior to the beginning of the 1984–85 Court term, the Court determined that the more appropriate procedure is to reserve decision and to issue an order following a conference. That practice is now followed uniformly.

21. In November of 1983, 74 excessive sentence appeals were filed according to an examination of the prescribed transcript request forms. Earlier estimates indicated that a minimum of 60 excessive sentence appeals would be filed each month. Thus, between 720 and 888 excessive sentence appeals are expected to be filed each year. The 74 excessive sentence appeals filed in November of 1983 represented 32.59% of all criminal appeals filed. Clearly, a large portion of the criminal appeals begin as excessive sentence appeals.

22. A further study of the excessive sentence appeals filed in November 1983 reveals that in 23% of the cases, all transcripts are filed within 30 days of the filing of the notice of appeal. Furthermore, within two months, 51% are filed, and within three months, 63% are filed. Once these transcripts are received in an excessive sentence appeal, the matter is ready for calendaring for oral argument without brief.

23. I estimate that a two-year program will be necessary to eliminate the backlog of more than eight hundred excessive sentence appeals existing at the end of August 1984. Subsequently, up to one-third of all criminal appeals may be disposed of on oral argument within six months of the filing of the notice of appeal. (The median time from the filing of the notice of appeal to final disposition in criminal appeals is currently more than fourteen and one-half months.) It is also hoped that the Public Defender and Attorney General will then be able to

devote more of their time and limited resources to more difficult issues on appeal.

24. Prior to the beginning of the 1984–85 court year, the Court determined that each Part should receive two calendars during the regular term. Each calendar will consist of approximately forty-five (45) excessive sentence appeals.

25. The Court also directed the Clerk's office to reject for filing all excessive sentence briefs. The bar was notified of the continued use of the excessive sentence procedure of oral argument without brief by publication of the Order of the Supreme Court dated August 22, 1984 continuing the relaxation of *R.* 2:6–11(c) and *R.* 2:11–1. (See p. 487).

26. On September 10, 1984 a letter was also sent to James Smith, Esquire, advising the Appellate Section of the Public Defender's office of this rejection policy. (See p. 488).

27. Between September and December 1984, a number of excessive sentence briefs were received by the Clerk's office from both the Office of the Public Defender and from some members of the bar. Most of these briefs were rejected; however, some were inadvertently filed and the appeals subsequently disposed of by submission on the briefs or by motion for summary disposition. As a result, the Court directed that a second notice to the bar be published specifically setting forth the policy of rejection of excessive sentence briefs. This was published as a Notice to the Bar in the December 13, 1984 issue of the *New Jersey Law Journal.* (See p. 489). Internal review procedures in the Clerk's office have also been strengthened in order to ensure that all briefs alleging only the excessiveness of the sentence are rejected.

28. The notice of appeal in *Bianco* was filed on September 19, 1983. The final transcript was filed on October 14, 1983. On March 7, 1984, the appeal was calendared for the first excessive argument calendar to take place on March 29, 1984. As of the date the appeal was calendared no appellant's brief had been received by the Clerk's office. The appeal was

subsequently heard on oral argument and decided on April 6, 1984.

29. The appeal in *State v. Bianco*, A–305–83T4, was originally calendared for March 29, 1984, the very first excessive sentence calendar, but was postponed to April 6, 1984 due to inclement weather.

30. *Bianco* was selected from the first printout obtained of all appeals in which the only transcripts ordered were of a plea, or sentencing or both. The printout listed all criminal appeals satisfying these criteria in ascending order by docket number.

31. Priority was given to the oldest cases first in selecting appeals from the printout for calendaring. However, an effort was also made to select between 5 and 7 appeals assigned to individual Deputy Public Defenders in order to require the attendance at oral argument of a minimal number of staff from the Public Defender's office. This was thought to be more efficient and non-disruptive to their office. This determination was made based upon the Deputy Public Defender who signed the notice of appeal. This caused some appeals, such as *Bianco*, to receive additional priority which they would not have had based upon their age alone. Private counsel cases were not grouped but were listed individually on any available calendar and private counsel were required to appear to argue a single case at that time.

32. From the inception of the program, the Office of the Public Defender elected to reassign appeals to selected staff members who then appeared at oral argument. As a result, the Clerk's office no longer groups excessive sentence appeals on calendars based upon the original assignment in the Public Defender's office.

33. As a result of calendaring the oldest appeals first, most of the 1982 excessive sentence appeals were calendared prior to the beginning of the 1984–85 court year. A few 1982 cases continue to be calendared as the appropriate transcripts are obtained.

34. Excessive sentence appeals in which the defendant is represented by private counsel are few in number; however, they have always been considered for selection for oral argument without brief calendars. These cases are placed on a calendar as soon as they are identified as having all transcripts completed. They are not held up until they become as old as the cases in which the Public Defender's office is involved.

35. Between September 1 and November 30, 1984, 556 criminal appeals were filed in the Appellate Division. Of this, 185 or 33% were identified as potentially involving only the issue of the excessiveness of sentence. At this rate, 740 excessive sentence appeals will be filed this year. Ten (10) of the 185 excessive sentence appeals were filed by private counsel.

36. Prior to the full institution of the excessive sentence oral argument program, the filing of the appellant's brief was most often followed by the filing of a motion by the State for summary disposition of the appeal, or in the alternative, for permission to use the motion brief as a merits' brief. During the 1983–84 court year, 371 such motions for summary disposition were granted. These motions were all submitted without oral argument to two-judge panels for determination and were disposed of by order rather than by opinion.

37. As of this date, excessive sentence calendars have been prepared through March 11, 1985. Calendar notices for that date were mailed to counsel on December 31, 1984, ten weeks prior to the argument date. Five additional excessive sentence calendars will be scheduled between March 26 and May 30, 1985. Calendar notices for the May 30th excessive sentence oral arguments will be mailed to counsel on or before March 15, 1985.

I hereby certify that the foregoing statements made by me are true to the best of my knowledge. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

/s/ Wesley R. LaBar

Wesley R. LaBar

Deputy Clerk

Dated: January 9, 1985

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION.
DOCKET NO.

BEFORE PART G

TRANSCRIPT FILED
APPELLANT'S BRIEF FILED
RESPONDENT'S BRIEF FILED
DATE SUBMITTED TO COURT
DATE ARGUED
DATE DECIDED

ORDER

THIS MATTER HAVING BEEN DULY PRESENTED TO THE COURT, IT IS HEREBY ORDERED AS FOLLOWS:

Having considered the record and argument of counsel, and it appearing that the sole issue on appeal is the alleged excessiveness of sentence, we conclude that the sentence imposed/by the trial judge does not reflect an abuse of /discretion. State v. Whitaker, 79 N.J. 503, 512-517 (1979), State v. Roth, 95 N.J. 334 (1984).

The judgment below is affirmed.

FOR THE COURT:

_____
P.J.A.D.

WITNESS, THE HONORABLE , PRESIDING JUDGE OF PART , SUPERIOR COURT OF NEW JERSEY, APPELLATE DIVISION, THIS DAY OF 19

Elizabeth McLaughlin
CLERK OF THE APPELLATE DIVISION

486

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.

BEFORE PART G

TRANSCRIPT FILED_____
APPELLANT'S BRIEF FILED_____
RESPONDENT'S BRIEF FILED_____
DATE SUBMITTED TO COURT_____
DATE ARGUED_____
DATE DECIDED_____

ORDER

THIS MATTER HAVING BEEN DULY PRESENTED TO THE COURT, IT IS

HEREBY ORDERED AS FOLLOWS:

FOR THE COURT:

_____
P.J.A.D.

WITNESS, THE HONORABLE , PRESIDING
JUDGE OF PART , SUPERIOR COURT OF NEW JERSEY, APPELLATE DIVISION,
THIS DAY OF 19 .

Elizabeth McLaughlin
CLERK OF THE APPELLATE DIVISION

Having considered the record and argument of counsel, and it
appearing that the sole issue on appeal is the alleged excessiveness
of sentence, we conclude that the sentence imposed by the trial judge
does not reflect an abuse of discretion. State v. Whitaker, 79 N.J.
503, 512-517 (1979), State v. Roth, 95 N.J. 334 (1984).

The judgment below is affirmed.

- - - - - - - - - - - - - - - - - - - - - - - - - - -

Having considered the record and argument of counsel, and it
appearing that this matter is not ready for disposition on oral argument

without brief, this matter is postponed until a later date for disposition after full briefing.

Appellant's brief shall be filed within _____ days of the date of this order; respondent's brief shall be filed within _____ days of the service of the appellant's brief upon the respondent; and a reply brief, if any, shall be filed by appellant within _____ days of the service of the respondent's brief on the appellant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -

The Court has been advised that the defendant is no longer incarcerated. The sole issue raised, i.e., that the sentence is "excessive", is clearly without merit. R. 2:11-3(e)(2). The judgment of conviction is affirmed.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -

It appearing that the sole issue is the alleged excessiveness of sentence and that the defendant has been released from custody, the within appeal is dismissed as moot.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## NEW JERSEY LAW JOURNAL

## Thursday, April 12, 1984

## Order Relaxing Rules

### SUPREME COURT OF NEW JERSEY

It is hereby ORDERED that Rules 2:6-11(a) and 2:11-1 are relaxed so as to permit criminal appeals, in which the excessiveness of the sentence imposed is the sole issue on appeal, to be disposed of without briefs, on the basis of oral argument before the Appellate Division.

The provisions of this Order, which extends an earlier Order of this Court dated March 22, 1984, are effective as of September 1, 1984 and until further Order of the Court.

For the Court,
Robert N. Wilentz, C.J.
Dated: August 22, 1984

488

## Superior Court of New Jersey
### APPELLATE DIVISION

ELIZABETH McLAUGHLIN
CLERK

WESLEY R. LaBAR
DEPUTY CLERK

OFFICE OF THE CLERK
CN 006
TRENTON, NJ 08625

September 10, 1984

James K. Smith, Esq.
Office of the Public Defender
Appellate Section, First Floor
20 Evergreen Place
East Orange, New Jersey 07018

Dear Mr. Smith:

The Court has directed this office to reject for filing <u>all</u> excessive sentence briefs and to list all such appeals for oral argument without brief. I am, therefore, returning the brief in <u>State vs. Moscato</u> (A-5051-82T4) at this time. While the brief is dated July 5, 1984, it was received in our office on August 28, 1984. The appeal has been, and will remain, calendared for oral argument without brief on September 19, 1984. A calendaring notice was previously forwarded to your office dated July 30, 1984.

All excessive sentence briefs filed prior to the Court's directive to reject such briefs will remain filed. This should include most of the forty-three (43) excess sentence letter briefs filed by your office between June 4, 1984 and August 20, 1984. The Court's directive does not, of course, apply to the other forty-nine (49) briefs filed by your office during the same time frame which addressed other or additional issues.

While the excess sentence briefs will be rejected and the original returned to your office, we will retain the copies of the appendices and any copies of the transcripts for use in conjunction with the oral argument.

Very truly yours,

Wesley R. LaBar
Deputy Clerk of the Appellate Division

/dr

c: Hon. Robert A. Matthews
 Hon. Thomas F. Shebell, Jr.
 Thomas Smith
 Anne Paskow
 Richard Berg

NEW JERSEY LAW JOURNAL.
THURSDAY, DECEMBER 13, 1984

# Excessive Sentence Criminal Appeals

## SUPERIOR COURT OF NEW JERSEY APPELLATE DIVISION

During the 1983-84 court year, a pilot program was initiated involving criminal appeals in which the sole issue on appeal was the excessiveness of the sentence imposed. That program proved to be very successful. It permitted the Court to review, in a more timely fashion, 272 criminal appeals by oral argument without brief.

During the current court year, this practice has been fully implemented in the Appellate Division and all 8 Parts will hear these matters on a rotating basis. The Clerk's office has been directed to reject all criminal appellants' briefs in which the sole issue raised is that of the excessiveness of the sentence. All such appeals will, instead, be placed on an oral argument calendar and will be considered by the Court without briefs.

When such an appeal is calendared by the Clerk, all parties will be notified of the calendar date and the appellant will be responsible for the prompt reproduction of additional copies of the transcript and copies of the pre-sentence report, indictment(s), judgment(s) of conviction, and criminal docket sheet. The appellant must serve a copy of same

upon the State and forward the appropriate copies to the Clerk's office.

All excessive sentence criminal appeal calendars will be sound recorded and the Court will issue an order entering a final disposition in the matter or setting the matter down for full briefing if it is determined that additional issues exist in the appeal.

Robert A. Matthews,
Presiding Judge for
Administration

## Superior Court of New Jersey
### APPELLATE DIVISION

ELIZABETH McLAUGHLIN
CLERK

WESLEY R. LeBAR
DEPUTY CLERK

PART: G

OFFICE OF THE CLERK
CN 006
TRENTON, NJ 08625

Date: DECEMBER 11, 1984

OFFICE OF THE PUBLIC DEFENDER
20 EVERGREEN PLACE
EAST ORANGE NJ 07018

Attn: JAMES SMITH, JR.

RE: EXCESSIVE SENTENCE ORAL ARGUMENT DATE

Dear Counsel:

Anne Paskow, Esq.
Division of Criminal Justice
CN 085, Hughes Justice Complex
Trenton, New Jersey 08625

cc: Richard Barg, Esq.

JUDGES: MATTHEWS
FURMAN
COHEN

The appeals listed below will be called for oral argument without brief on FEBRUARY 14 , 1985, in the Courtroom of the Superior Court of New Jersey, Appellate Division, before Part G, beginning at 9:30 a.m. on the 5th floor of the Richard J. Hughes Justice Complex, Trenton, New Jersey.

DOCKET NO. TITLE TIME

The appellant is advised that within ;ten(10) days of his receipt of this notice, he shall serve upon the respondent a copy of all necessary transcript(s), the Pre-Sentence Report and such appendix which may be required by R.2:6-1, et seq. Proof of such service shall be filed with the Clerk within ten (10) days thereof. Additionally, appellant shall file three (3) copies of the aforesaid transcript(s), Pre-Sentence Report and appendix with the Clerk of the Appellate Division within

ten(10) days of receipt of this notice. In the event any party contends that other issues exist in addition to the excessive nature of the sentence, they shall so advise the Clerk of the Court at least ten (10) days prior to oral argument.

Very truly yours,

*Elizabeth McLaughlin*
Elizabeth McLaughlin
Clerk of the Appellate Division

Form #Cal. 2

# Superior Court of New Jersey
### APPELLATE DIVISION

ELIZABETH McLAUGHLIN
CLERK

WESLEY R. LeSAR
DEPUTY CLERK

OFFICE OF THE CLERK
CN 006
TRENTON, NJ 08625

Date:

Attn: cc: Richard Berg, Esq.

RE: EXCESSIVE SENTENCE ORAL ARGUMENT DATE

Dear Counsel:

 The appeals listed below will be called for oral argument without brief on _____, 198 , in the Courtroom of the Superior Court of New Jersey, Appellate Division, before Part , beginning at 9:30 a.m. on the 5th floor of the Richard J. Hughes Justice Complex, Trenton, New Jersey.

DOCKET NO. TITLE TIME

 The appellant is advised that within ten(10) days of his receipt of this notice, he shall serve upon the respondent a copy of all necessary transcript(s), the Pre-Sentence Report and such appendix which may be required by R.2:6-1, et seq. Proof of such service shall be filed with the Clerk within ten (10) days thereof. Additionally, appellant shall file three (3) copies of the aforesaid transcript(s). Pre-Sentence Report and appendix with the Clerk of the Appellate Division within ten(10) days of receipt of this notice. In the event any party contends that other issues exist in addition to the excessive nature of the sentence, they shall so advise the Clerk of the Court at least ten (10) days prior to oral argument.

Very truly yours, A TRUE COPY

*Elizabeth McLaughlin*
Elizabeth McLaughlin Clerk
Clerk of the Appellate Division

Form #Cal. 2