THE STATE, EX REL. A JUVENILE, *v.* HOOSE.

(No. 12-196—Decided April 25, 1988.)

*Purola & Savage* and *Albert L. Purola,* for petitioner.

*John E. Shoop,* prosecuting attorney, for respondent.

*Per Curiam.* This is a complaint in which petitioner, a juvenile, seeks a writ of mandamus from this court ordering respondent, the Honorable Richard J. Hoose, to appoint a private psychiatric examiner of the court's choosing other than the court's psychologist, at the expense of the state for purposes of evaluating, preparing, and presenting a defense to the relinquishment proceedings instituted against petitioner.

Petitioner is charged with committing three acts which would constitute felonies in the event the petitioner is charged as an adult. Following the institution of relinquishment proceedings by the prosecutor's office, respondent judge of the Juvenile Division of the Lake County Court of Common Pleas ordered a physical and mental examination of petitioner. Petitioner responded by notifying the court that he would exercise his Fifth Amendment privilege with respect to the ordered mental examination by the court psychiatrist. See *Estelle* v. *Smith* (1981), 451 U.S. 454. Petitioner then filed a motion with the court requesting that the court select an ap-

propriately qualified professional, not presently employed by the court, to undertake a private psychiatric evaluation at the state's expense, whom the trial court would select or designate. See *Ake* v. *Oklahoma* (1985), 470 U.S. 68.

On April 22, 1987, respondent conducted a hearing on petitioner's motion. Arguing that petitioner's mental condition was a significant factor for the court's consideration in determining whether to relinquish its jurisdiction and/or to develop the possible defense of insanity, counsel for petitioner advanced that petitioner had a due process right to the appointment of a private examiner. At the conclusion of the hearing, respondent denied petitioner's motion for a private psychiatric evaluation, concluding such motion was "premature."

Petitioner now frames the issue presented for this court's consideration as follows:

"Does the Due Process Clause of the Fourteenth Amendment, as interpreted in *Ake* v. *Oklahoma,* 470 U.S. 68 (1985), require that a juvenile faced with a bind-over attempt in juvenile court, be provided with a court-appointed psychiatrist to assist in evaluating, preparing and presenting a defense to the relinquishment request, after a preliminary showing that insanity may be an issue, before he is required to waive his Fifth Amendment right to remain silent and submit to a verbal examination by the juvenile court psychiatrist under Juvenile Rule 30(B)?"

Petitioner relies on *Ake* v. *Oklahoma, supra,* to support his claim that he is entitled to the appointment of a private psychiatric examiner at the state's expense for purposes of determining whether juvenile court jurisdiction should be waived and whether petitioner should be prosecuted as an adult in the common pleas court. In *Ake,* the United States Supreme Court held that:

"* * * [W]hen a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a state provide [the defendant] access to a psychiatrist's assistance on this issue, if the defendant cannot otherwise afford one." *Id.* at 74.

The issue thus presented is whether the constitutional right enunciated in *Ake, supra,* extends to an indigent juvenile faced with relinquishment proceedings, when the juvenile has established that his sanity at the time the offense was committed may be a significant factor in his defense.

Although certain constitutional rights afforded to adults in criminal cases have also been applied in juvenile proceedings, see *In re Winship* (1970), 397 U.S. 358; *In re Gault* (1967), 387 U.S. 1; and *Kent* v. *United States* (1966), 383 U.S. 541, not all of the constitutional guarantees have been so extended. As noted in *Kent, supra,* at 555:

"Because the State is supposed to proceed in respect of the child as *parens patriae* and not as adversary, courts have relied on the premise that the proceedings are 'civil' in nature and not criminal, and have asserted that the child cannot complain of the deprivation of important rights available in criminal cases. It has been asserted that he can claim only the fundamental due process right to fair treatment. For example, it has been held that he is not entitled to bail; to indictment by grand jury; to a speedy and public trial by jury; to immunity against self-incrimination; to confrontation of his accusers; and in some jurisdictions (but not in the District of Columbia, see *Shioutakon* v. *District of Columbia,* 98 U.S. App. D.C. 371, 236 F. 2d 666 (1956), and *Black* v. *United*

*States* [122 U.S. App. D.C. 393, 355 F. 2d 104 (1965)], *supra*) that he is not entitled to counsel." (Footnotes omitted.)

In this respect, the United States Supreme Court expressly refused to rule that juveniles charged with more serious criminal offenses are entitled to the same constitutional protections as those afforded an adult. *Kent, supra,* at 556.

This court is of the view that *Ake, supra,* does not establish that petitioner is entitled at this juncture to the appointment of a private psychiatric examiner at the expense of the state. In so determining, we note that the constitutional right enunciated in *Ake* was predicated on the United States Supreme Court's concern that a criminal defendant faced with a loss of liberty and/or life be afforded those protections necessary to insure a fair trial:

"The private interest in the accuracy of a criminal proceeding that places an individual's life or liberty at risk is almost uniquely compelling. Indeed, the host of safeguards fashioned by this Court over the years to diminish the risk of erroneous conviction stands as a testament to that concern. * * *" *Ake, supra,* at 78.

In accordance with the foregoing, the court held that the right to a private psychiatric examiner extended not only to the trial proceeding itself, but also to the sentencing aspect of a criminal trial.

In the present cause, however, petitioner seeks to secure a psychiatric examiner at the state's expense for a hearing which will not determine his guilt or innocence, or which will not result in the ultimate imposition of sentence.

Rather, petitioner seeks the subject appointment in a proceeding to determine whether the juvenile court should maintain or waive its jurisdiction. Since this clearly is not a phase where petitioner's life or liberty is expressly at stake, it cannot be concluded that the juvenile here is constitutionally entitled to the appointment of a private psychiatric examiner:

"It is doubtful that a juvenile has a constitutional right to a psychiatrist at a waiver hearing. While in *Ake* v. *Oklahoma,* 470 U.S. 68, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985), the United States Supreme Court held that an indigent defendant has a constitutional right to a psychiatrist when sanity is a significant factor at trial, the right was outlined there in proceedings where 'an individual's life or liberty [was] at risk.' *Id.* at 78, 105 S. Ct. at 1094, 84 L. Ed. 2d at 63. New Jersey case law reflects this distinction. A constitutional right to an expert will accrue when guilt or innocence is at issue, and a loss of liberty is at stake. See *State* v. *Green,* 55 N.J. 13, 18 (1969). * * * But in a waiver hearing, guilt or innocence is not at issue. Rather, the focus is on the appropriate court to hear the case." *State* v. *R.G.D.* (1987), 108 N.J. 1, 18, 527 A. 2d 834, 842.

In addition, petitioner argues that the appointment of a private psychologist is necessary to insure that the indigent juvenile receives effective assistance of counsel. In this regard, he urges that the United States Supreme Court has held that the procedures employed during a waiver determination must conform with the essential elements of due process and fair treatment. We acknowledge this general postulate:

"* * * *[T]here is no place in our system of law for reaching a result of such tremendous consequences* without ceremony — without hearing, *without effective assistance of counsel,* without a statement of reasons. * * *" (Emphasis added.) *Kent, supra,* at 554.

Petitioner claims that he needs a private psychologist to permit him to

make an informed decision as to whether to submit to a Juv. R. 30(B) mental examination with a court psychologist. For example, petitioner states that if he waives the mental examination, but retains his Fifth Amendment rights, the juvenile court may conclude that petitioner's mental health is not a persuasive and determining factor for retaining jurisdiction. On the other hand, he contends that if he submits to a mental examination with the hope that certain findings made during such examination might support retention of juvenile court jurisdiction, he does so under the hazard of his Fifth Amendment rights. Consequently, any statements made by him may be used in subsequent court proceedings against him, in effect, without qualification, restriction, or inhibition.

Juv. R. 32(B) negates petitioner's contention here in part providing that:

"* * * The person preparing a social history or making a physical or mental examination shall not testify about the history or examination or information received in its preparation in any juvenile traffic offender, delinquency, or unruly child adjudicatory hearing, except as may be required in a hearing to determine whether a child should be transferred to an adult court for criminal prosecution."

In essence, the argument raised by counsel for petitioner is that he faces a dilemma in advising his client on whether to submit to a mental examination by a court psychologist because of the potential use of any incriminating statements made by him during such examination.

Contrary to petitioner's concern here, it is our view that any incriminating matter which might be obtained during the mental examination with the court psychologist pertaining to the relinquishment proceeding is expressly precluded from being used for anything other than the waiver determination itself. Juv. R. 32(B).

Consequently, if the juvenile court decides to retain its jurisdiction, the relevant juvenile rule prevents the use of any statements made by petitioner during the course of the ensuing hearing there in determining the status of the charge or charges there. This provision in our judgment also bars the use of such statements if the juvenile is treated as an adult offender in the general division of the common pleas court.

In this context, we would also understand that if jurisdiction is waived by the juvenile court in this case, petitioner could make another request for an independent examiner as an adult offender under R.C. 2945.39 (C), which would appropriately serve the development of an insanity defense or similar consideration.

Further, any potentially incriminating statements made by petitioner during the course of those proceedings, should he be tried as an adult, would also be barred from use against him at a criminal trial. As contained in R.C. 2945.38(J):

"No statement made by a defendant in an examination or hearing relating to his competence to stand trial shall be used in evidence against him on the issue of guilt in any criminal action."

Further, R.C. 2945.39(D) provides:

"No statement made by a defendant in an examination or hearing relating to his mental condition at the time of the commission of an offense shall be used in evidence against him on the issue of guilt in any criminal action."

Consequently, any concern petitioner may have with respect to incriminating statements being used against him as a result of a mental examination by a court psychologist are negated by relevant statutory law.

Based on the view thus adopted by this court, we conclude that petitioner is not entitled to a writ of mandamus, there being an adequate remedy of law:

"The writ of mandamus must not be issued when there is plain and adequate remedy in the ordinary course of the law." R.C. 2731.05.

The request for a writ of mandamus is denied.

*Writ denied.*

FORD, P.J., COOK and CHRISTLEY, JJ., concur.