OPINION
{¶ 1} Defendant-appellant R.J., Jr. appeals a decision of the Greene County Court of Common Pleas, Juvenile Division, finding him delinquent for the offense of aggravated assault, a felony of the fourth degree. On November 3, 2004, R.J. was charged by complaint with one count of attempted felonious assault in violation of R.C. §§ 2923.02(A) and 2903.11(A)(1), one count of felonious assault in violation of R.C. § 2903.11(A)(2), and one count of aggravated assault in violation of R.C. § 2903.12(A)(2).
 {¶ 2} On March 11, 2005, R.J. filed a motion to suppress certain statements he made during an interview with his court appointed guardian ad litem (GAL) outside the presence of defense counsel. A hearing on said motion was held on July 12, 2005. On July 27, 2005, the juvenile court issued an order overruling R.J.'s motion to suppress.
 {¶ 3} In return for dismissing the attempted felonious assault and felonious assault charges, as well as a domestic violence charge from another case, R.J. agreed to enter a no contest plea to the remaining count of aggravated assault on October 18, 2005. On December 6, 2005, the juvenile court sentenced R.J. to a suspended commitment to Ohio Department of Youth Services and placed him on supervision until he reached the age of eighteen. R.J. was also ordered to pay a fine of $200.00 and court costs of $79.00.
 {¶ 4} R.J. filed a timely notice of appeal on January 6, 2006.
 I {¶ 5} The incident that forms the basis for this appeal occurred on November 1, 2004, at the residence of R.J.'s mother and stepfather. After R.J. returned home, his stepfather confronted him about stealing items from the house and then selling them. The discussion quickly escalated into a physical confrontation in R.J.'s bedroom. R.J. grabbed his stepfather and tried to choke him. R.J.'s brother entered the room and was able to separate them. R.J.'s brother and stepfather left R.J. in his room and returned to the downstairs of the residence.
 {¶ 6} After a short time, R.J. came downstairs brandishing some type of weapon and stated that he was going to "slice everyone up in the house." The stepfather attempted to restrain R.J. but sustained a cut on his left thumb in the ensuing struggle. R.J.'s brother was able to take the knife away from him. R.J. then ran outside the house and threw a bike at his mother who sustained minor injuries as a result of the attack. The police were contacted shortly thereafter, and R.J. was taken into custody and charged with attempted felonious assault, felonious assault, and aggravated assault.
 {¶ 7} The juvenile court removed R.J. from the home and transported him to the Greene County Juvenile Court Detention Center. The juvenile court appointed defense counsel for R.J. on November 5, 2004. On November 9, 2004, the trial court appointed a separate Court-Appointed Special Advocate (CASA) to serve as R.J.'s GAL. Prior to the pre-trial conference held on March 4, 2005, the GAL interviewed R.J. and obtained a written statement of his version of the events which led to his removal from his home. The GAL asked R.J. to provide a written statement because R.J. claimed that the police report was incorrect regarding some details of the incident. Specifically, R.J. stated that his uncle was pushing him around before he attacked his stepfather and that he came downstairs with a bicycle peg rather than a knife when he threatened his family.
 {¶ 8} The GAL subsequently filed her report with the juvenile court which contained R.J.'s statements concerning the incident. This report was not objected to by R.J.'s first attorney who later withdrew based on a conflict of interest. Upon being appointed, R.J.'s second attorney immediately filed a three-pronged motion asking the court to suppress the written statement, remove the GAL, and adopt a standing order which would prohibit the GAL as well as other court personnel from having contact with R.J. outside the presence of his attorney. The juvenile court overruled the motion to suppress R.J.'s written statement as well as the motion to remove the GAL. However, the juvenile court adopted a standing order prohibiting the GAL and other court personnel from speaking with R.J. outside the presence of his counsel.
 {¶ 9} From the denial of the motion to suppress his statements made to the GAL, R.J. appeals.
 II {¶ 10} R.J.'s sole assignment of error is as follows:
 {¶ 11} "THE TRIAL COURT ERRED IN ALLOWING THE COMMUNICATIONS OF A JUVENILE TO HIS CASA (GAL) TO BE USED AGAINST HIM OVER OBJECTION OF COUNSEL, IN VIOLATION OF STATUTORY PROVISIONS AND HIS DUE PROCESS RIGHTS UNDER THE OHIO AND FEDERAL CONSTITUTION."
 {¶ 12} In his sole assignment, R.J. contends that the trial court erred when it overruled his motion to suppress, thereby violating his due process rights by allowing the statements he made to the GAL to be used as evidence of impeachment at trial. R.J. argues that by speaking with the court appointed GAL, he unknowingly waived his Fifth Amendment rights against self-incrimination. In his brief, R.J. relies on State v. Hoose
(1988), 43 Ohio App.3d 109, 539 N.E.2d 704 and asks us to extend the protections of Juv. R. 32(B), R.C. §§ 2945.38(J), and2945.39(C) (D), which deal specifically with court appointed mental health examiners, to CASA/GAL volunteers. Those sections of the juvenile code and the revised code restrict the use of incriminating statements of a juvenile who is interviewed by a court appointed mental health examiner. Said statements may not be used against the child at trial to establish guilt. However, R.J.'s reliance on the holding in Hoose is misplaced.
 {¶ 13} The following standard governs our review of a trial court's decision regarding a motion to suppress:
 {¶ 14} "We are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard."State v. Retherford (1994), 93 Ohio App.3d 586, 592,639 N.E.2d 498.
 {¶ 15} Pursuant to R.C. § 2151.281(A)(2), the trial court is required to appoint a GAL for a child in a delinquency proceeding when there is a conflict between the child and the child's parent, guardian, or legal custodian. Thus, under the circumstances of this case, the juvenile court was required to appoint a GAL to serve R.J.'s "best interests" throughout the course of the proceeding. As the juvenile court noted, R.J. was also entitled to representation from an attorney so that his legal and constitutional rights would be protected. This situation highlights the difficulties that may arise when actions taken by a court appointed GAL to promote what he or she believes are the best interests of the child may undermine the child's legal rights, stymie the efforts of his attorney, and in fact, be contrary to the child's penal interests.
 {¶ 16} In determining whether a statement given without the benefit of Miranda warnings should be suppressed, the court must evaluate whether: 1) the defendant was in "custody;" and 2) the defendant was under "interrogation." Rhode Island v. Innis
(1980), 446 U.S. 291, 300-302, 100 S.Ct. 1682. In Califormia v.Beheler (1983), 463 U.S. 1121, 103 S.Ct. 3517, the U.S. Supreme Court held that "although circumstances of each case influence a determination of whether a suspect is `in custody' for the purpose of Miranda protection, the ultimate inquiry is simply whether there is [a] formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." Id.,
paragraph two of the syllabus.
 {¶ 17} Miranda warnings need only be given during custodial interrogation. Illinois v. Perkins (1990), 496 U.S. 292,110 S.Ct. 2394. Custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda v. Arizona (1966),384 U.S. 436, 444, 86 S.Ct. 1602, 1612.
 {¶ 18} It is clear that R.J. was in custody for the purposes of Miranda. However, the GAL was not acting in the capacity of a law enforcement official nor was she acting at the direction of law enforcement officials. Further, the GAL's testimony reveals that she was not interrogating R.J. She was acting at the behest of the juvenile court who appointed her to serve the best interests of the child. R.J. was not entitled to Miranda
warnings before being interviewed by the GAL. There are no provisions in the Ohio Revised Code nor juvenile rules that render communications between a child and his GAL privileged. Thus, the trial court did not err when it overruled R.J.'s motion to suppress. We note that the record reveals that R.J.'s statements were limited to use for impeachment only.
 {¶ 19} We agree with the juvenile court that in a situation such as the one we are presented with, great pains must be taken to protect the legal rights of the child while also preserving the GAL's ability to act in the child's best interests. However, the child's constitutional right to legal representation including his right to be free from self-incrimination should not be diluted by a well intentioned GAL. We propose two alternatives for a juvenile court when presented with a delinquent child who is entitled to both legal representation and a GAL: 1) have the appointed attorney serve a dual role as both GAL and counsel for the delinquent child at least at the pre-adjudication stage; or as the juvenile court suggested and implemented here, 2) adopt a standing rule that the attorney be present for any meetings between the child and the GAL to make sure that the child's legal rights are not compromised. Either alternative is necessary to secure the child's constitutional rights in a delinquency proceeding and avert a dangerous conflict of best interest colliding with penal interests.
 {¶ 20} R.J.'s sole assignment of error is overruled.
 III {¶ 21} R.J.'s sole assignment of error having been overruled, the judgment of the juvenile court is affirmed.
Wolff, J. and Walters, J, concur.
(Hon. Sumner E. Walters retired from the Third District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio).