STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
ARTHUR GREEN, DEFENDANT-APPELLANT.

Argued September 8, 1969—Decided November 17, 1969.

14

*Mr. Richard Newman,* Deputy Public Defender, argued the cause for the defendent-appellant (*Mr. Stanley C. Van Ness,* Public Defender, attorney; *Mr. Richard Newman* on the brief).

*Mr. Archibald Kreiger,* Assistant County Prosecutor, argued the cause for the plaintiff-respondent (*Mr. John G. Thevos,* Passaic County Prosecutor, attorney).

The opinion of the Court was delivered

PER CURIAM. Defendant Arthur Green was indicted on three counts which charged him with stealing a check, forging the payee's endorsement on the check, and knowingly uttering the check to obtain a television set and cash. On May 17, 1967, defendant was tried but the jury was unable to agree on a verdict. A second trial was held on June 16 and 17 of the same year and resulted in a verdict of guilty on all counts. The Appellate Division affirmed the convictions and this Court granted defendant's petition for certification. 54 *N. J.* 99 (1969).

The State's evidence showed that the defendant and Eugene Burns lived in separate apartments in the same building. On February 3, 1967, defendant purchased a color television set from the Eagle Furniture Company in Paterson for $495. He paid for the set with a $925 check which was made out to Eugene Burns in payment of a workman's compensation claim. Defendant endorsed the check in Burns' name and received from Gitkin, a salesman

for Eagle Furniture, the cash difference between the price of the television set and the amount of the check. Defendant then left the store with the set and the cash.

Apparently Gitkin had second thoughts about accepting the check and the following day he sent a repairman to the address which the defendant had given him. After arriving at the defendant's apartment, the repairman asked for Burns who coincidentally was visiting with the defendant. The repairman said that he had come to check the recently purchased television set. Burns denied having bought a set, but was told that, the night before, a color television set had been purchased with a $925 check made out to his name. Burns then went to the furniture store and spoke with Gitkin after which both men, joined by Officer Callahan of the Paterson police force, proceeded to the defendant's apartment. A woman admitted them to the apartment where they saw a color television set. After checking the serial number, Gitkin identified the set as the one paid for with the check made out to Burns.

The defense was based on a complete denial of all pertinent events. Defendant denied that he had signed the check. He testified that he had never seen the check, that he had never been in the Eagle Furniture Store, that he had never been visited by Burns or any repairman in his apartment, and that he had never possessed a color television set.

Before the trial which resulted in his convictions, the defendant made three motions: 1) for the suppression of certain evidence; 2) for a transcript of the first trial; and 3) for the appointment of a handwriting expert. The trial court denied each of these motions and it is these denials which form the basis of the present appeal.

██ Defendant first contends that the trial court erred in refusing to hear his motion to suppress testimony concerning observations of the television set made by the State's witnesses when they entered his apartment without a warrant. *R. R.* 3 :2A–6 (*a*) provides that a motion to suppress must be made within 30 days after the initial plea unless

"good cause" for a delay can be shown. Defendant concedes that his motion was not made within the specified time limitation, but argues that there was "good cause" to extend the period. He urges that he never had possession of the television set in question and therefore had no way of anticipating testimony by the State's witnesses regarding its presence in his apartment. There is no doubt, however, that defendant was aware of the State's evidence at the first trial on May 17. Nevertheless, he did not make a motion to suppress at that time. Instead, he gave notice of motion several days after the first trial. *State v. Wade,* 89 *N. J. Super.* 139 (*App. Div.* 1965), upon which defendant relies, is applicable. There the defendant objected to the allegedly illegal evidence at the initial trial as the defendant in the present case should have done. We cannot say that the judge at the second trial erred in finding that the defendant had not shown "good cause" for his belated motion. But in any event our examination of the record convinces us that the motion would not have succeeded. It was uncontradicted that the defendant's girl friend let the State's witnesses into the apartment and by defendant's own admission he gave them permission to "look around."

Defendant next contends that, as an indigent, he was entitled to a full transcript of the previous trial. He urges that the trial court's denial of his request constituted a denial of due process and equal protection of the laws. At the trial the judge adopted a procedure whereby he provided the defense with relevant parts of the transcript upon its request. The defense asked for and received sections of Gitkin's testimony at the prior trial which he used in cross examination and summation. No request for parts of the transcript was denied. Although as a matter of fairness we believe that an indigent defendant should be given a transcript of the testimony from his prior trial, *State v. Simmons,* 52 *N. J.* 538, 544 (1968), *cert.* denied, 395 *U. S.* 924, 89 *S. Ct.* 1779, 23 *L. Ed.* 2d 241 (1969), our examination of the record in both trials fails to disclose any

material discrepancies other than those which defendant had already brought out by use of the prior transcript in cross-examining Gitkin. We therefore conclude that defendant was not prejudiced by his inability to obtain a full transcript.

Finally, defendant contends that the trial court's refusal to appoint an impartial handwriting expert at public expense violated his sixth amendment right to assistance of counsel and his fourteenth amendment right to equal protection of the laws. The trial judge based his refusal on the ground that, in balance, the expense to the county outweighed the value of such expert testimony. He observed that there was direct testimony that defendant had signed the check in the presence of Gitkin. He added that a forger would make every effort to disguise his writing. Thus, he reasoned that a handwriting analysis would be unavailing to the defendant. We think that in a case such as the present one where the pivotal fact is whether the defendant signed an instrument, the court on application of an indigent defendant should order the appointment of a handwriting expert. See *People v. Watson,* 36 *Ill. 2d* 228, 221 *N. E. 2d* 645 (1966). A defendant's lack of funds should not prevent him from obtaining evidence which might establish his innocence. *Cf. State v. Horton,* 34 *N. J.* 518, 534 (1961). For this reason, at the argument before us, we informed the public defender that we would refrain from reaching a decision in this case until he had the opportunity to engage a handwriting expert who could compare the signature on the check in question with writings of the defendant and forward us his report. The public defender has sent us the report in which the expert concluded that although there was insufficient evidence to form a positive identification, there were numerous similarities between defendant's handwriting and the signature on the check, and the defendant could not be eliminated from consideration. It is our opinion that these findings would be more likely to reinforce the jury's verdict of guilty than to aid the defendant.

Therefore, we find no prejudice in the trial court's denial of defendant's motion.

Judgment affirmed.

*For affirmance*: Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANE-MAN—7.

*For reversal*—NONE.