797 A.2d 166 (2002)
351 N.J. Super. 77
In the Matter of the CIVIL COMMITMENT OF D.L.
In the Matter of the Civil Commitment of C.M.
Superior Court of New Jersey, Appellate Division.
Argued March 20, 2002.
Submitted April 5, 2002.
Decided May 7, 2002.
*167 John E. Shields, Jr., Haddonfield, argued the cause for appellant D.L. in A-1185-01 (Baker, Shields and Baker, attorneys; Mr. Shields, on the brief).
Appellant C.M., filed a pro se brief in A-2279-01.
Thomas A. Mitchell, Assistant Camden County Counsel, argued the cause for Office of County Counsel in A-1185-01 (Frederick J. Schuck, County Counsel; Mr. Mitchell, on the brief).
Thomas M. Bachman, Assistant Essex County Counsel, argued the cause for Office of County Counsel in A-1185-01 (Steve Mannion, Acting County Counsel; Mr. Bachman, on the brief).
Mary Beth Wood, Deputy Attorney General, argued the cause for State of New Jersey in A-1185-01 (Peter C. Harvey, Acting Attorney General; Ms. Wood, on the brief).
Patrick D. Reilly, Director, Division of Mental Health and Guardianship Advocacy, argued the cause for Office of the Public Defender in A-1185-01 (Peter A. Garcia, Acting Public Defender, attorney; Joan D. Van Pelt, Assistant Deputy Public Defender, on the brief).
Peter A. Garcia, Acting Public Defender, attorney for Office of the Public Defender in A-2279-01 (Joan D. Van Pelt, Assistant Deputy Public Defender, on the brief).
Peter C. Harvey, Acting Attorney General, attorney for State of New Jersey in A-2279-01 (Maria B. Desautelle, Deputy Attorney General, on the brief).
Before Judges KING, CUFF and WINKELSTEIN.
Argued No. A-1185-01 March 20, 2002.
Submitted No. A-2279-01 April 5, 2002.
The opinion of the court was delivered by WINKELSTEIN, J.A.D.
C.M. and D.L. have each appealed from an order of commitment issued pursuant to the New Jersey Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38. C.M. has filed a pro se motion to proceed as an indigent and for appointment of appellate counsel and free transcripts. D.L. has moved pro se to proceed as an indigent and for free transcripts. The motions have been consolidated for purposes of this opinion. Orders permitting both C.M. and D.L. to proceed as indigents have previously been entered. The issues we address in this opinion are whether an indigent committed under the SVPA (1) has a right to appointed counsel on appeal; (2) is entitled to a free transcript; and, (3) if so, who will be responsible to bear the cost of the transcript. We conclude that because a commitment under the SVPA implicates a constitutionally protected liberty interest, the committed indigent has a right to appointed counsel on appeal and is entitled to a transcript at the Public Defender's expense.

I
A "sexually violent predator" is defined as:
[A] person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sexually violent offense, or has been charged with a sexually violent offense but found to be incompetent to stand trial, and suffers from a mental abnormality or personality disorder that *168 makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment.
[N.J.S.A. 30:4-27.26(b).]
The SVPA provides for the commitment of sexually violent predators in a separate and secure facility from those committed under the general voluntary civil commitment statutes. See N.J.S.A. 30:4-27.25d. Persons committed under the SVPA are also "housed and managed separately from offenders in the custody of the Department of Corrections." N.J.S.A. 30:4-27.34a. The State has designated the Special Treatment Unit, also referred to as the Northern Regional Unit, located at Kearny, Hudson County, as the facility to house sexually violent predators under the SVPA. Although the Department of Corrections is responsible for the operation of the facility, it is the Division of Mental Health Services in the Department of Human Services that provides treatment which "shall be appropriately tailored to address the specific needs of sexually violent predators." N.J.S.A. 30:4-27.34b. In In re Commitment of M.G., 331 N.J.Super. 365, 373, 751 A.2d 1101 (App.Div. 2000), Judge Carchman pointed out the differences between the Kearny facility[1] and other therapeutic placement facilities which house those persons committed under the general voluntary commitment laws:
Persons committed to Kearny are housed in locked rooms and monitored by uniformed correctional officers, some carrying weapons, who are employed by the Department of Corrections. Residents leaving the facility are shackled with handcuffs to waist chains and also with ankle cuffs. There are no opportunities at Kearny to advance to a less restrictive physical structure.
To commit a person involuntarily under the SVPA, "the State must establish by clear and convincing evidence that he suffers from a mental abnormality or personality disorder which makes him likely to engage in acts of sexual violence if not confined." In re Commitment of W.Z., 339 N.J.Super. 549, 570, 773 A.2d 97 (App. Div.) (citing N.J.S.A. 30:4-27.26; N.J.S.A. 30:4-27.32a), certif. granted, 169 N.J. 611, 782 A.2d 428 (2001). Once confined, if a person's treatment team "determines that the person's mental condition has so changed that the person is not likely to engage in acts of sexual violence if released," it "shall" recommend that the Department of Human Services authorize the person to petition the court for discharge. N.J.S.A. 30:4-27.36a. Otherwise, the person is afforded an annual court review hearing for the continued need for involuntary commitment. N.J.S.A. 30:4-27.35. In the absence of extraordinary circumstances, additional review hearings shall not be held more than once every thirty days. Ibid. Once committed under the SVPA, a person remains confined until a court determines that the person is no longer a sexually violent predator. N.J.S.A. 30:4-27.32b. Consequently, periods of confinement under the SVPA are indefinite.
The SVPA includes various safeguards for the person to be committed, including the right to be present at the court hearings, the right to present evidence and *169 cross-examine witnesses, the right to a hearing in camera and, if indigent, the right to appointed counsel at the commitment and review hearings. N.J.S.A. 30:4-27.31. All court hearings shall be transcribed. N.J.S.A. 30:4-27.30d. The SVPA does not provide an indigent with appointed counsel or free transcripts on appeal.

II
Both C.M. and D.L. have been committed by the Law Division as sexually violent predators. C.M. is thirty-eight years old. As a juvenile, he was arrested twice in 1978 on charges of committing indecent acts. The first complaint was dismissed; the second adjudication was deferred and ultimately dismissed after a period of probation. In 1980, C.M. was charged with aggravated sexual assault and criminal sexual conduct. He was adjudicated a delinquent in both instances and sentenced to two consecutive indeterminate terms at the Yardville Youth Correctional Center. In 1983 he was released on parole, conditioned upon out-patient mental health counseling for not less than one year. The following year his parole was revoked after he was convicted of unlawful possession of a weapon and possession of an illegal substance.
As an adult, C.M. was arrested in 1987 and charged with aggravated sexual assault, attempted aggravated sexual assault, criminal restraint, burglary, robbery, possession of a weapon, and attempted murder. On March 1, 1989 he entered a plea to aggravated sexual assault and robbery, and on June 27, 1989 he was sentenced to two concurrent twenty-year terms with a ten-year mandatory minimum term. He was committed to the Adult Diagnostic and Treatment Center at Avenel.
C.M. was scheduled to be released from Avenel on August 10, 2000, the expiration of his maximum term. On August 3, 2000 the Attorney General filed a petition in the Superior Court seeking C.M.'s civil commitment pursuant to the SVPA. N.J.S.A. 30:4-27.28. On August 10, 2000 the Law Division found probable cause to believe that C.M. was a sexually violent predator and issued a temporary commitment order authorizing his transfer to Kearny. The commitment hearing was held on December 18, 2000 before Judge Perretti, who found C.M. to be a sexually violent predator and ordered his continued commitment at Kearny. At a review hearing on December 3, 2001, Judge Perretti found that C.M. remained a sexually violent predator in need of further commitment and ordered his continued confinement. A second review hearing is scheduled for December 3, 2002. C.M. has appealed Judge Perretti's decision.
D.L. is forty-four years old. In 1983 he was charged with burglary, aggravated criminal sexual contact and attempted sexual assault involving a sixteen-year-old girl. He entered a plea to one count of aggravated criminal sexual conduct. Prior to sentencing on that charge, he was arrested and charged with criminal sexual contact of a seventeen-year-old girl. He was sentenced to 364 days in Camden County Jail with a six-month mandatory minimum and three years probation for the sexual offense against the sixteen-year-old, and to a consecutive fifteen-month term of incarceration with a seven-month mandatory minimum for his offense against the seventeen-year-old.
In 1986 D.L. pled guilty to one count of aggravated sexual assault against a twenty-year-old female, and one count of robbery. A twenty-five-year sentence was imposed with a five-year mandatory minimum. During his period of incarceration he was paroled, but was returned to prison on a parole violation after testing positive for illegal drug use.
*170 On January 18, 2001 the State filed a petition to have D.L. civilly committed pursuant to the SVPA. Judge Thompson found probable cause to believe that D.L. was a sexually violent predator and ordered his temporary civil commitment at Kearny. Judge Thompson further ordered that the Office of the Public Defender be assigned to represent D.L. at the initial commitment hearing. Subsequently, private counsel was substituted as D.L.'s attorney for that proceeding. The commitment hearing was conducted by Judge Perretti on September 6 and September 21, 2001. Judge Perretti found that D.L. was a sexually violent predator in need of commitment and he was remanded to Kearny for care and treatment. A review hearing is scheduled for September 19, 2002. D.L. has appealed.

III
We first address whether a statutory basis exists to appoint appellate counsel for indigents subject to confinement under the SVPA. The SVPA provides for the appointment of counsel at the commitment hearings, but is silent regarding the appointment of counsel on appeal.[2]N.J.S.A. 30:4-27.31a. The Public Defender represents indigents at the commitment hearings pursuant to its responsibility under the Public Advocate Restructuring Act of 1994, which delegated responsibility for representation of indigent mental hospital admittees to the Office of the Public Defender. N.J.S.A. 52:27E-65a; see generally, N.J.S.A. 52:27E-50 to -80. This authorization to represent persons involuntarily committed under the general voluntary civil commitment statutes was found in N.J.S.A. 52:27E-24, which provided that the
Division of Mental Health Advocacy may provide such legal representation and medical consultation as the Director deems appropriate for any indigent mental hospital admittee in any proceeding concerning the admittee's admission to, retention in, or release from confinement in such a hospital, institution or facility.
With the enactment of the Public Advocate Restructuring Act in 1994, which abolished the Department of the Public Advocate, created by P.L. 1974, c. 27, the Public Advocate's obligation to represent mental hospital admittees was transferred to the Public Defender. N.J.S.A. 52:27E-51. The Public Defender and the Director of Mental Health Advocacy have interpreted N.J.S.A. 52:27E-24 to provide the Director with the discretion to decide which sexually violent predators to represent on appeal. The Public Defender's own enabling legislation is silent regarding the appointment of counsel on appeal for those committed as sexually violent predators. See generally, N.J.S.A. 2A:158A-2 to -15.2.
Rule 2:7-2 governs the assignment of counsel to indigent persons convicted of violations of the criminal statutes, and prisoners seeking review of administrative proceedings concerning their status as *171 prisoners. Otherwise, the New Jersey Court Rules do not provide for appointment of counsel on appeal for any other matter.
The State takes the position that because commitment proceedings pursuant to the SVPA are civil in nature, there is no requirement for appointment of appellate counsel. As support for its position, the State points to the SVPA, which, as previously noted, does not provide for counsel on appeal. See N.J.S.A. 30:4-27.31. The Public Defender utilizes a different approach. It acknowledges that N.J.S.A. 52:27E-24 authorizes the Public Defender to provide legal representation to those committed under the SVPA, but it argues that it need not provide counsel to all committed sexually violent predators who wish to appeal. Rather, the Public Defender takes the position that the decision of which persons to represent is left to the discretion of the Director of the Division of Mental Health Advocacy. The Public Defender makes a credible argument that this discretion is necessary because it simply cannot afford to adequately represent, on appeal, all of the persons committed as sexually violent predators. It presently represents the over 200 persons committed to the Special Treatment Unit, and, based on current funding levels, it would be impossible for the four attorneys assigned to these cases to provide adequate representation for all of the commitment hearings plus all of the appeals.
In its brief, the Public Defender recognizes that the right to counsel on appeal for those committed as sexually violent predators may be required under the due process provision of the federal constitution. If that right does exist, it contends that the cost of counsel should not be imposed upon it because it simply lacks sufficient funding to handle all of the appeals.
While there is "`no constitutional right to appeal[,]'" if a "state does provide an avenue of appeal, it must be implemented fairly." State v. Bianco, 205 N.J.Super. 462, 472, 501 A.2d 528 (1985) (Bianco I) (quoting Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987, 993 (1983)), aff'd, 103 N.J. 383, 511 A.2d 600 (1986) (Bianco II). Thus, the procedures used to decide appeals must comport with the demands of the Due Process Clause. Evitts v. Lucey, 469 U.S. 387, 392, 105 S.Ct. 830, 834, 83 L.Ed.2d 821 (1985). For most indigent criminal defendants convicted of crimes, the state must provide the means necessary to prosecute an appeal, such as a free transcript and effective assistance of counsel. Bianco I, 205 N.J.Super. at 472, 501 A.2d 528. "Otherwise the indigent would be denied appellate review by reason of poverty." Ibid. (citing Jones, 463 U.S. at 752, 103 S.Ct. at 3312, 77 L.Ed.2d at 993). Review may be granted upon such terms as the state deems proper, provided it establishes appellate procedures that satisfy the Due Process Clause. See Bianco II, 103 N.J. at 389, 511 A.2d 600. The appellate system must be "free of unreasoned distinctions," and indigents must have "an adequate opportunity to present their claims fairly within the adversary system." Bianco I, 205 N.J.Super. at 473, 501 A.2d 528 (citing Ross v. Moffitt, 417 U.S. 600, 612, 616, 94 S.Ct. 2437, 2446, 41 L.Ed.2d 341, 352 (1974)). Unfairness results when indigents are denied meaningful access to the appellate system because of their poverty. Ross, 417 U.S. at 611, 94 S.Ct. at 2444, 41 L.Ed.2d at 351.
The right to effective, unhindered, assistance of counsel is among those "immutable principles of justice which inhere in the very idea of free government." Powell v. Alabama, 287 U.S. 45, 68, 53 S.Ct. 55, 64, 77 L.Ed. 158, 170 (1932). Thus, indigent *172 criminal defendants have a right to counsel "at every step in the proceedings against [them]," Gideon v. Wainwright, 372 U.S. 335, 345, 83 S.Ct. 792, 797, 9 L.Ed.2d 799, 805 (1963), including on first appeal as of right. Evitts, 469 U.S. at 394-96, 105 S.Ct. at 834-36, 83 L.Ed.2d at 828-30. For an appeal to be meaningful a defendant must be represented by counsel. Wainwright v. Simpson, 360 F.2d 307, 309 (5th Cir.1966). In Evitts, the Supreme Court stated that "the services of a lawyer will for virtually every layman be necessary to present an appeal in a form suitable for appellate" review. 469 U.S. at 393, 105 S.Ct. at 834, 83 L.Ed.2d at 828. (citation omitted). Thus, a State that affords the right to appeal, must "make that appeal more than a `meaningless ritual' by supplying an indigent appellant in a criminal case with an attorney." Id. at 394, 105 S.Ct. at 834, 83 L.Ed.2d at 828 (quoting Douglas v. California, 372 U.S. 353, 358, 83 S.Ct. 814, 817, 9 L.Ed.2d 811, 815 (1963)).
In the criminal context, it is the Sixth Amendment of the United States Constitution, applicable to the states by virtue of the Fourteenth Amendment, which affords an accused the right to the assistance of counsel. Gideon, 372 U.S. at 342-43, 83 S.Ct. at 795-96, 9 L.Ed.2d at 804-05. The New Jersey Constitution contains almost identical language. N.J. Const. art I, ¶ 10. Even so, the Supreme Court has refused to extend the right to appointed counsel to criminal prosecutions which do not result in a defendant's loss of personal liberty. Lassiter v. Department of Social Services of Durham County, 452 U.S. 18, 26, 101 S.Ct. 2153, 2159, 68 L.Ed.2d 640, 649 (1981). Thus, it is the deprivation of personal freedom, not merely the prosecution itself, that triggers the right to counsel. Id., 452 U.S. at 25, 101 S.Ct. at 2158-159, 68 L.Ed.2d at 648.
What distinguishes this case from those mentioned is that a sexual offender classification hearing is a civil, not a criminal, proceeding. The issue then is what procedure is required in the context of this type of civil appeal. That is, whether indigent persons appealing involuntary commitment orders under the SVPA are entitled to the same due process as criminal defendants appealing their convictions.
The New Jersey Constitution provides for appellate review of civil decisions. N.J. Const. art. VI, § 5, ¶ 2; Midler v. Heinowitz, 10 N.J. 123, 89 A.2d 458 (1952). That being the case, due process considerations apply to appeals from decisions of the Law Division under the SVPA. The process to which an appellant is due, however, "depends on the extent to which [the] individual will be `condemned to suffer grievous loss.' The question is not merely the `weight' of the individual's interest, but whether the nature of the interest is one within the contemplation of the `liberty and property' language of the Fourteenth Amendment." Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494 (1972) (citations omitted). Thus, in civil proceedings where the "individual interests at stake ... are both `particularly important' and `more substantial than mere loss of money,'" due process places a higher burden on the state. Santosky v. Kramer, 455 U.S. 745, 756, 102 S.Ct. 1388, 1396, 71 L.Ed.2d 599, 608 (1982) (termination of parental rights) (citation omitted); see also Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) (involuntary commitment); Woodby v. INS, 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966) (deportation).
In affording juveniles the right to counsel when charged in a delinquency proceeding with an offense which may result in a curtailment of the juvenile's freedom, *173 the Court in In re Gault explained that the Due Process Clause of the Fourteenth Amendment requires a right to appointed counsel. 387 U.S. 1, 41, 87 S.Ct. 1428, 1451, 18 L.Ed.2d 527, 554 (1967); see also Vitek v. Jones, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (where four of the five judges who reached the merits concluded that an indigent prisoner is entitled to appointed counsel before being involuntarily transferred for treatment to a state mental hospital); In re D.C., 146 N.J. 31, 48, 679 A.2d 634 (1996) (finding that a person subject to an involuntary commitment is entitled to be represented by counsel).
Beyond doubt, an individual who faces involuntary commitment to a mental health facility has a liberty interest at stake. Commitment to a mental hospital produces a "massive curtailment of liberty," Humphrey v. Cady, 405 U.S. 504, 509, 92 S.Ct. 1048, 1052, 31 L.Ed.2d 394, 402 (1972), and in consequence "requires due process protection." Addington, 441 U.S. at 425, 99 S.Ct. at 1809, 60 L. Ed.2d at 331. In fact, commitment to a mental institution implicates procedural protections for reasons in addition to the loss of physical freedom. Commitment to an institution "`can engender adverse social consequences to the individual'" and "`[w]hether we label this phenomena `stigma' or choose to call it something else ... we recognize that it can occur and that it can have a very significant impact on the individual.' " Vitek, 445 U.S. at 492, 100 S.Ct. at 1263, 63 L. Ed.2d at 564 (quoting Addington, 441 U.S. at 425-26, 99 S.Ct. at 1809, 60 L. Ed.2d at 331).
The Vitek Court's concerns with the stigmatizing consequences of a transfer to a mental hospital, coupled with the subjection of a defendant to mandatory treatment, led it to conclude that due process required the appointment of counsel for indigent persons facing involuntary civil commitment. Vitek, 445 U.S. at 496-97, 100 S.Ct. at 1265-66, 63 L. Ed.2d at 556-57. It reasoned that since persons who are "illiterate and uneducated have a greater need for assistance in exercising their rights," it follows that a person "thought to be suffering from a mental disease or defect requiring involuntary treatment probably has an even greater need for legal assistance, for such a [person] is more likely to be unable to understand or exercise his rights." Ibid.
Here, D.L. and C.M. have been committed to Kearny, where they are housed in locked rooms, monitored by uniformed correctional officials, some of whom carry weapons; when they leave the facility the patients are shackled with handcuffs to waist chains and ankle cuffs. Their confinement is indeterminate. Only if the court finds that the person is no longer a sexually violent predator may the person be discharged. Confinement under the SVPA is theoretically without end. In that sense, it constitutes a greater liberty deprivation than that imposed upon a criminal defendant who, in all but a handful of cases, is given a maximum release date. A more onerous impairment of a person's liberty interest is difficult to imagine.
Evidence considered at a commitment hearing under the SVPA may be difficult to understand for the average person, let alone someone who suffers from a mental abnormality or personality disorder. The hearings generally consist of extensive psychological or psychiatric testimony, as well as evidence of actuarial risk assessments. Not unlike the sophisticated testimony presented at a typical abuse and neglect proceeding, the evidence may be "difficult to grasp and consequently difficult to refute for an uneducated and unsophisticated layman." Crist v. New Jersey *174 Division of Youth and Family Servs., 128 N.J.Super. 402, 410, 320 A.2d 203 (Law Div.1974) (quoting Danforth v. State Dep't. of Health and Welfare, 303 A.2d 794, 799 (Me.1973)), aff'd in part and rev'd in part, 135 N.J.Super. 573, 343 A.2d 815 (App.Div. 1975).
Accordingly, although commitment proceedings under the SVPA are civil in nature, to satisfy the Due Process Clause a sexually violent predator's "meaningful opportunity to be heard" should include, as it does in the criminal context, the right to the assistance of appellate counsel. Just as an indigent criminal defendant has a right to counsel on appeal, so should an indigent person who has been committed under the SVPA. The label affixed to a case, whether it be civil or criminal, is not the dispositive consideration. Rather, we look to the infringement upon the person's due process rights to guide our decision. The importance of counsel in these cases should not be minimized.
A 1974 County Court decision arrived at a similar conclusion. See In re Minehan, 130 N.J.Super. 298, 326 A.2d 118 (Cty. Prob.Div.1974) (affording the right to counsel on appeal for involuntary civil commitments). As have courts in other jurisdictions. See Pullen v. Florida, 802 So.2d 1113, 1119 (Fla.2001) (where the Supreme Court of Florida said, "the resolution of an appeal of [an involuntary civil] commitment order [should be] related to the merits of the appeal rather than to the individual's ability to hire private counsel"); Wisconsin ex rel. Seibert v. Macht, 244 Wis.2d 378, 627 N.W.2d 881, 883 (2001) (holding that a sexually violent predator is entitled to assistance of counsel on appeal as a matter of constitutional right), clarified on reconsideration, 249 Wis.2d 702, 639 N.W.2d 707 (2002).
Given these considerations, the discretionary authority provided to the Director of the Division of Mental Health Advocacy to decide which cases to appeal must yield to a sexually violent predator's right to counsel on appeal as mandated by the Due Process clause of the federal constitution. All of those indigent persons committed pursuant to the SVPA who want to appeal are entitled to appellate counsel, not just those whom the Director deems appropriate.

IV
We next address the right of an indigent to a free transcript on appeal. This is also the Public Defender's obligation. Statutorily, the Public Defender is obligated "to provide all other necessary expenses of representation" to indigents it represents, which would include payment for the transcript on appeal. N.J.S.A. 2A:158A-2 & 5. This generally occurs in the context of a criminal proceeding. See also State v. Green, 55 N.J. 13, 17, 258 A.2d 889 (1969) (holding that criminal defendants are entitled to a free transcript on appeal).
In civil appeals, the Public Defender is required to provide transcripts only in very exceptional cases. For example, in termination of parental rights proceedings, the Public Defender provides both counsel and all resources necessary to defend the case. In re G.S., 137 N.J. 168, 179, 644 A.2d 1088 (1994); New Jersey Div. of Youth and Family Servs. v. E.B., 137 N.J. 180, 186-87, 644 A.2d 1093 (1994); In re Guardianship of Dotson, 72 N.J. 112, 118-19, 367 A.2d 1160 (1976) (where the Supreme Court, focusing on the quasi-criminal nature of the case, permitted a free transcript to a mother whose parental rights had been terminated by the trial court); E.B., 137 N.J. at 186-87, 644 A.2d 1093 (finding the Public Defender responsible for reasonable and necessary expenses incurred in neglect proceedings); *175 See also Robinson v. Saint Peter's Med. Ctr., 236 N.J.Super. 94, 103-04, 564 A.2d 140 (Law Div.1989) (where, in dicta, the court concluded that due process does not require a public entity to "pay costs of an appeal in all civil cases where the appellant is indigent," but "[a]n involuntary civil commitment is so obviously similar to a criminal penalty with respect to the rights at stake, that the right to free transcripts to civil litigants in such cases cannot be questioned.")
Thus, while there is no blanket right to a free transcript in all civil cases, ancillary expenses, including free transcripts, have been authorized by our courts for civil appeals where the appellant had a constitutional right to counsel. In other words, the right to counsel on appeal carries with it the concomitant right to all of the necessary expenses of representation, including the cost of transcripts. Because the Office of the Public Defender is required to represent indigent persons subject to the SVPA, it follows that it is responsible for the ancillary costs of representation, including the costs of transcripts on appeal.[3]
We recognize, and do not minimize, the negative fiscal impact this decision may have upon the Public Defender's budget. However, just as is the case with criminal defendants, those committed as sexually violent predators are subject to a grievous loss of liberty. Their confinement may be tantamount to life imprisonment. The federal constitution requires that they be provided with the same panoply of rights as are available to those who can afford legal counsel, including the right to appellate counsel. Competent legal representation is a necessity for a meaningful appeal. See Gideon, 372 U.S. at 344, 83 S.Ct. at 796, 9 L.Ed.2d at 805 (holding that lawyers are "necessities, not luxuries," in our adversarial system of justice.) The Office of the Public Defender, having been designated by the legislature to represent indigent persons confined under the SVPA, will have to look to its current and future appropriations to pay for these services.
Motions granted.
NOTES
[1] The Department of Corrections has recently opened an additional facility for sexually violent predators, known as the Annex to the Northern Regional Unit, located in Woodbridge. The facility has more of a dormitory-type setting than does the Kearny facility. It may be characterized as a medium security facility. The admittees are monitored by corrections officers and the facility is encircled by two twelve-foot high fences topped with razor wire.
[2] We note parenthetically that N.J.S.A. 30:4-27.33, which allows for involuntary commitment hearings for persons who lack the mental capacity to stand trial for the underlying sexually violent offense, provides that the Law Division may, without a jury, determine whether the person committed the predicate act charged. In such a case the legislation gives the accused "all constitutional rights available to a defendant at a criminal trial, other than the right to a trial by jury and the right not to be tried while incompetent...." We need not decide whether this provision gives the accused the right to counsel on appeal, because it applies only to the trial of the underlying predicate act, not to the issue with which we are faced: the right to counsel to appeal a decision to involuntarily commit the person.
[3] The State alternatively contends that a reconstructed record pursuant to R. 2:5-3(f), rather than a full transcript, will suffice. We do not address that issue. Whether a full transcript or a reconstructed record needs to be obtained is left to the discretion of the Public Defender.