45 A.3d 394

IN THE MATTER OF THE CIVIL COMMITMENT
OF D.Y. SVP 491–08.

Superior Court of New Jersey
Appellate Division

Submitted May 29, 2012—Decided June 21, 2012.

438

Before Judges PARRILLO, GRALL and ALVAREZ.

*Joseph P. Krakora,* Public Defender, attorney for appellant (*Michelle N. Cox,* Designated Counsel, on the brief).

*Jeffrey S. Chiesa,* Attorney General, attorney for respondent (*Melissa H. Raksa,* Assistant Attorney General, of counsel; *David L. DaCosta,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

PARRILLO, P.J.A.D.

In this appeal from a Law Division order committing defendant D.Y. to the Special Treatment Unit (STU) pursuant to the New Jersey Sexually Violent Predator Act (SVPA), *N.J.S.A.* 30:4–27.24 to –27.38, the essential issue is whether there is a constitutional right to self-representation at the commitment hearing. Defendant contends the trial court's denial of his motion for self-representation violated his Sixth Amendment and due process rights. For reasons that follow, we find no deprivation of constitutional dimension and therefore affirm the commitment order.

Defendant is a fifty-two-year-old male with a long history of repeated pedophiliac sexual assaults. On June 24, 1994, he pled guilty to the predicate offense of first-degree aggravated sexual assault, *N.J.S.A.* 2C:14–2(a), involving the sustained sexual abuse of a young boy over a three-year period, and was thereafter sentenced to an eighteen-year prison term with a six-year period of parole ineligibility.[1] Upon expiration of the sentence, on May

---

[1] On October 28, 1994, defendant pled guilty to related federal charges of coercing a minor to engage in sexually explicit conduct for the purpose of making visual depictions of such conduct, 18 *U.S.C.A.* § 2251(a), and interstate transportation of a minor with intent to engage in sexual activity with a minor,

27, 2008, the State moved to civilly commit defendant as a sexually violent predator and presented clinical certificates of two psychiatrists, who diagnosed him with pedophilia (males) and anti-social personality disorder. Based thereon, an order of temporary commitment to the STU was issued on June 4, 2008.

The commitment hearing commenced on June 23, 2008 and, for reasons to be explained, continued and concluded on June 8, 2009. At the hearing, the State's expert, Dr. Howard Gilman, a psychiatrist, testified that he diagnosed defendant with pedophilia, sexually attracted to boys, and personality disorder NOS with both paranoid and narcissistic features. The expert opined that these conditions predispose defendant to commit acts of sexual violence and cause him difficulty in controlling such behavior. According to Gilman, defendant's risk of sexually offending in the future is "highly likely," an opinion confirmed by defendant's elevated score on Static–99 testing. Defendant's high risk of sexually reoffending is also indicated by his obstinate resistance to treatment over the years, denial of sexual deviation, and the fact that he committed the predicate offenses while on probation for another crime.

Based on the undisputed expert proofs, the trial judge found defendant to be a sexually violent predator by clear and convincing evidence. Accordingly, the judge entered an order committing defendant to the STU and scheduled a review for June 1, 2010.

The nearly one-year interregnum between the start and conclusion of the commitment hearing had been occasioned by questions raised as to defendant's competency. At the initial hearing on June 23, 2008, after being questioned about refusing an interview with the State's expert, defendant replied: "No ... I don't want a hearing, either.... Just sign the commitment papers." Defendant then stated that he wanted to leave and that he had recently fired his attorney. When the court informed defendant that the statute required he be represented, defendant commented "[w]hy,

---

18 *U.S.C.A.* § 2423. Defendant was sentenced on these charges to a 137–month term of incarceration followed by three years of supervised probation.

this is nothing but a joke anyhow. Just go ahead and commit me. . . . Just sign the commitment papers and be done with it." When once again reminded of the statutory requirement during one of his repeated interruptions, defendant reiterated "[h]e's not my counsel[,]" and that such an appointment "is illegal according to the United States Constitution[,] [because] [w]e're allowed to represent ourselves no matter what the State says, [i]t shows how . . . corrupt the State is, and how corrupt the Court is."

After Gilman was unable to render an opinion as to defendant's competency based on available information, the court continued the proceedings and ordered a psychiatric evaluation of defendant. Dr. Peter Paul conducted the examination on July 28, 2008 and concluded that defendant was competent to participate in his commitment hearing based on the criteria for competency to stand trial in *N.J.S.A.* 2C:4-4. After a number of adjournments requested by defense counsel, the hearing proceeded to conclusion on June 8, 2009. Defendant absented himself from the hearing and counsel presented no witnesses on his behalf.

At the start of the hearing that day, defense counsel informed the court that defendant wished to proceed *pro se* and asked that this request be allowed. The judge denied the application, noting instead that had defendant attended the hearing, he would have been given the opportunity to participate by making statements and asking questions but that he would also have to be represented by counsel as required by statute.

I

On appeal, defendant contends that self-representation, with the assistance of standby counsel, is mandated by both the Sixth Amendment and the due process clause of the Fourteenth Amendment. As to the former, defendant relies exclusively on *Faretta v. California,* 422 *U.S.* 806, 95 *S.Ct.* 2525, 45 *L.Ed.*2d 562 (1975), which held that a defendant in a criminal prosecution has a constitutional right, as a corollary to the Sixth Amendment right to counsel, "to proceed *without* counsel when he voluntarily and

intelligently elects to do so." *Id.* at 807, 95 *S.Ct.* at 2527, 45 *L.Ed.*2d at 566.

■ Of course, the right to self-representation is not absolute, *Martinez v. Court of Appeal of Cal., Fourth Appellate Dist.,* 528 *U.S.* 152, 161, 120 *S.Ct.* 684, 691, 145 *L.Ed.*2d 597, 607 (2000), as " 'at the [criminal] trial level, . . . the government's interest in ensuring the integrity and efficiency of trial at times[,] outweighs the defendant's interest in acting as his own lawyer.' " *State v. Reddish,* 181 *N.J.* 553, 581, 859 *A.*2d 1173 (2004) (quoting *Martinez, supra,* 528 *U.S.* at 161–62, 120 *S.Ct.* at 691, 145 *L.Ed.*2d at 607). Indeed, "[t]here may be times, . . . when the defendant will be required to cede control of his defense to protect the integrity of the State's interest in fair trials and permit courts to ensure that their judgments meet the high level of reliability demanded by the Constitution." *Reddish, supra,* 181 *N.J.* at 587, 859 *A.*2d 1173.

■ Irrespective of any such limitations, the *Faretta* right to self-representation is based on the Sixth Amendment, which grants a personal right to make one's own criminal defense, and also on the historical evidence that the right to self-representation in criminal prosecutions has existed since the "beginning of the Nation." *Martinez, supra,* 528 *U.S.* at 156, 120 *S.Ct.* at 688, 145 *L.Ed.*2d at 603. In other words, the Sixth Amendment right to counsel and its correlative right to waive the assistance of counsel expressly pertain to criminal prosecutions only. Significantly, the Supreme Court has never extended the right to any proceeding other than a criminal prosecution, *Martinez, supra,* 528 *U.S.* at 159–60, 120 *S.Ct.* at 690, 145 *L.Ed.*2d at 605, and has even rejected its application to criminal appeals, *id.* at 163, 120 *S.Ct.* at 692, 145 *L.Ed.*2d at 608, finding that an accused person's rights under the Sixth Amendment are available only "in preparation for trial and at the trial itself." *Id.* at 154, 159–60, 120 *S.Ct.* at 687, 690, 145 *L.Ed.*2d at 602, 605.

Thus, defendant's constitutional claim, to the extent it is grounded on the Sixth Amendment, fails because the right to self-representation does not apply to the SVPA involuntary commitment proceeding at issue here. It is by now well established that the SVPA is a civil scheme, *In re Commitment of J.M.B.*, 197 *N.J.* 563, 577–78, 964 *A.2d* 752, *cert. denied*, 558 *U.S.* ——, 130 *S.Ct.* 509, 175 *L.Ed.2d* 361 (2009), regulatory in purpose and design, and non-punitive in purpose. *State v. Bellamy*, 178 *N.J.* 127, 138, 835 *A.2d* 1231 (2003); *see also Kansas v. Hendricks*, 521 *U.S.* 346, 369, 117 *S.Ct.* 2072, 2085, 138 *L.Ed.2d* 501, 519 (1997) (holding that the Kansas SVPA scheme is civil, not criminal); *People v. Fraser*, 138 *Cal.App.4th* 1430, 42 *Cal.Rptr.3d* 424, 435 (2006) (holding that "because a civil commitment proceeding under the [California] SVPA has a nonpunitive purpose and is therefore not equivalent to a criminal prosecution, ... there is no Sixth Amendment right to self-representation in SVPA proceedings"). Consequently, because the SVPA is a civil statute and not part of the criminal code, we conclude that there is no Sixth Amendment right to self-representation in involuntary commitment proceedings instituted thereunder.

## II

Because the Sixth Amendment does not apply to the instant proceeding, we look to see whether the Fourteenth Amendment's Due Process Clause supports defendant's constitutional claim. For reasons that follow, we are unpersuaded that self-representation is a necessary component of a fair civil commitment proceeding.

"Due process is a flexible concept." *In re Commitments of M.G. & D.C.*, 331 *N.J.Super.* 365, 374, 751 *A.2d* 1101 (App.Div. 2000); *see also Gilbert v. Homar*, 520 *U.S.* 924, 930, 117 *S.Ct.* 1807, 1812, 138 *L.Ed.2d* 120, 127 (1997). While we have recognized that an SVPA commitment hearing should "provide as much procedural protection to the committee as the circumstances permit[,]" *In re Commitment of E.S.T.*, 371 *N.J.Super.* 562, 574 n. 5, 854 *A.2d*

936 (App.Div.2004), due process in this scenario " 'is not measured by the rights accorded a defendant in criminal proceedings, but by the standard applicable to civil proceedings.' " *Fraser, supra,* 42 *Cal.Rptr.*3d at 435 (quoting *People v. Superior Court (Howard),* 70 *Cal.App.*4th 136, 82 *Cal.Rptr.*2d 481, 492 (1999)).

 Determining what is required to satisfy due process under a "given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." *Cafeteria & Restaurant Workers Union, Local 473 v. McElroy,* 367 *U.S.* 886, 895, 81 *S.Ct.* 1743, 1748–49, 6 *L.Ed.*2d 1230, 1236 (1961). Thus, in the civil context, the process due under the Constitution involves a weighing of several factors:

[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

[*Mathews v. Eldridge,* 424 *U.S.* 319, 335, 96 *S.Ct.* 893, 903, 47 *L.Ed.*2d 18, 33 (1976).]

As to the first factor, the private interests affected by civil commitment under the SVPA are substantial as they implicate "liberty, reputation, and freedom from unwanted treatment." *Fraser, supra,* 42 *Cal.Rptr.*3d at 436. Clearly, SVPA commitment entails a "very real threat of lengthy incarceration[,]" *In re Commitment of E.S.T., supra,* 371 *N.J.Super.* at 574 n. 5, 854 *A.*2d 936, and therefore a very significant loss of physical freedom. In addition to the curtailment of liberty, SVPA commitment, as with commitment to a mental hospital, "can engender adverse social consequences to . . . and . . . have a significant impact on the individual." *In re Commitment of D.L.,* 351 *N.J.Super.* 77, 89, 797 *A.*2d 166 (App.Div.2002) (internal quotation marks omitted), *certif. denied,* 179 *N.J.* 373, 845 *A.*2d 1255 (2004). As a result, persons subject to involuntary commitment are entitled to "as much procedural protection . . . as the circumstances permit." *In re Commitment of E.S.T., supra,* 371 *N.J.Super.* at 574 n. 5, 854 *A.*2d 936.

The second factor asks us to determine whether self-representation is necessary to protect the private interests at stake. Stated another way, we look to see whether insistence on counsel representation runs the risk of an erroneous deprivation of the interest affected by the SVPA proceeding when compared to the alternative suggested by defendant. On this score, we agree with the *Fraser* court's finding that "[t]his factor weighs against a constitutional right to self-representation because it is well established that self-representation does not further the fairness or accuracy of the proceedings." *Fraser, supra,* 42 *Cal.Rptr.*3d at 436 (internal quotation marks omitted). Quoting *Faretta's* own acknowledgment that "in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts[,]" *Faretta, supra,* 422 *U.S.* at 834, 95 *S.Ct.* at 2540, 45 *L.Ed.*2d at 581, the court in *Fraser* reasoned that *Faretta's* rule of self-representation neither "aid[s] in the search for truth [n]or insure[s] the integrity of the factfinding process[,]" and instead "will most likely have the directly opposite effect." 42 *Cal.Rptr.*3d at 436. Our Court has also warned that "a defendant's decision to proceed *pro se* may be fraught with risk." *State v. King,* 210 *N.J.* 2, 17, 40 *A.*3d 41 (2012). And defendant does not suggest otherwise.

In fact, so vital is the liberty interest at stake, that persons subject to an involuntary commitment are constitutionally entitled to be represented by counsel. *In re D.C.,* 146 *N.J.* 31, 48, 679 *A.*2d 634 (1996); *In re Commitment of D.L., supra,* 351 *N.J.Super.* at 89, 797 *A.*2d 166. Such entitlement was expressly engrafted into the SVPA legislative scheme as an absolute mandate. *See N.J.S.A.* 30:4–27.29(c) (providing that an individual "subject to involuntary commitment shall have counsel present at the hearing and shall not be permitted to appear at the hearing without counsel"). Given this and other procedural protections legislatively prescribed, we perceive no probable value in self-representation as a so-called additional safeguard against the erroneous deprivation of the private interests implicated in the SVPA proceeding.

The third factor also weighs against finding a constitutional right to self-representation. As already noted, self-representation is likely to impede the government's interest in ensuring the integrity of the fact-finding process and the fairness of the result reached in a matter impacting such an essential interest as individual liberty. Nor will self-representation necessarily enhance the State's interest in the efficient and orderly administration of civil justice. Indeed, the burden placed on both of these governmental interests by self-representation is particularly onerous in matters such as here where the proof is largely expert in nature and therefore well beyond the ken of the average layperson. To discern the potential for disruption and adverse impact on the integrity of the proceeding, one need look no further than the present case, wherein defendant shouted out during the expert's direct examination, that the witness was "lying" and the court "corrupt."

Weighing the factors required by the balancing test set forth in *Mathews* to determine the extent of the due process afforded a defendant in a SVPA proceeding, we conclude there is no constitutional right to self-representation. This is because the significant interests implicated therein are adequately safeguarded by extant procedural protections, including, most importantly, the right to counsel. Therefore, self-representation, not shown to be necessary to the preservation or enhancement of those interests, is not an essential ingredient of a fair commitment proceeding. If anything, a defendant's desire for self-representation is far outweighed by the inherent risks and burdens that it places on the orderly, efficient and fair administration of civil justice.

We add that, although not constitutionally required, the "hybrid" approach suggested by the trial judge in allowing defendant to personally and actively participate in his defense along with counsel appears to be a reasonable accommodation of defendant's pronounced wish to represent himself and the court's obligation to ensure the integrity of the proceeding. Defendant, however, rejected this opportunity and instead absented himself completely

from the hearing and failed to offer any evidence countering the State's rather strong expert proofs. Under the circumstances, defendant should not now be heard to complain that the very proceedings he abandoned and afforded him all the process due should be invalidated as constitutionally unfair.

## III

■ Lastly, defendant contends he was deprived of his statutory right to a hearing within twenty days of his temporary commitment and therefore the commitment order must be vacated. We disagree.

"A person who is involuntarily committed ... shall receive a court hearing with respect to the issue of continuing need for involuntary commitment as a sexually violent predator within 20 days from the date of the temporary commitment order." *N.J.S.A.* 30:4–27.29(a). In accordance therewith, defendant's initial hearing on June 23, 2008, commenced within twenty days of the temporary commitment order. However, the fact that the proceeding was not completed until much later is adequately explained by the asserted need for a competency evaluation and defense counsel's adjournment requests and, in any event, does not warrant vacatur of the commitment order.

■ The trial court "has power to order a competency hearing *sua sponte* ...." *State v. Spivey*, 65 *N.J.* 21, 37, 319 *A.*2d 461 (1974). In determining whether further inquiry is required, "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant ..., but ... even one of these factors standing alone may, in some circumstances, be sufficient." *State v. Lambert*, 275 *N.J.Super.* 125, 129, 645 *A.*2d 1189 (App.Div.1994) (quoting *Drope v. Missouri*, 420 *U.S.* 162, 180, 95 *S.Ct.* 896, 908, 43 *L.Ed.*2d 103, 118 (1975)).

Here, defendant was disruptive in court, evidencing not only an inability to abide by court rules if allowed to proceed *pro se*, but

irrational behavior as well. Moreover, Dr. Gilman voiced concerns about defendant's competency based on his demeanor during Gilman's attempt to interview him, stating "there was the possibility of significant psychiatric pathology in this brief observation that I had, especially with the records that I had reviewed." Gilman next discussed defendant's psychiatric hospitalizations and non-compliance with his medication routine, and noted that "there was a diagnosis at some point of delusional disorder." Thus, the judge had good reason to question defendant's competency.

After the issuance of the competency report, defendant never complained about the delay in continuing the hearing. In fact, the adjournment subsequent to the competency evaluation was at the request of defendant's attorney and was granted with the required liberality. *In re Commitment of M.M.*, 384 *N.J.Super.* 313, 331, 894 *A.*2d 1158 (App.Div.2006). Furthermore, of the two adjournments that were granted prior to defendant's competency evaluation, at least one was requested by his attorney. Given that the State was ready to proceed at the commencement of the commitment hearing on June 23, 2008, the extended delay thereafter was without either fault of the State or undue prejudice to defendant.

Affirmed.